Childs et al., Appellants, *v.* Smeltzer.

Argued January 16, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph P. Gaffney,* for appellant.

*Edgar W. Lank,* with him *Samuel Lander,* for appellee.

*Samuel R. Rosenbaum,* with him *Joseph First,* for Philadelphia Real Estate Board, amicus curiæ.

*Oscar G. Bender* and *Samuel R. Rosenbaum,* for Pennsylvania Real Estate Association, amicus curiæ.

*Oscar G. Bender,* for North Philadelphia Realty Board and West Philadelphia Realty Board, amici curiæ.

*Morris B. Levitt,* for South Philadelphia Realty Board, amicus curiæ.

OPINION BY MR. CHIEF JUSTICE FRAZER, April 9, 1934:
Appellants, members of the Committee on Unauthorized Practice of Law of the Philadelphia Bar Association, acting for and by authority of that body, sought by bill in equity to obtain an injunction restraining defendant and her employees from practicing law in any form, from holding herself out as having a right to practice law, or from advertising that she furnishes legal services or draws legal papers of any kind. Defendant, who styles herself a conveyancer, is a notary public and stenographer, with offices located in the Real Estate Trust Building, Philadelphia. She is not a lawyer and has not been admitted to the bar of Philadelphia County or else-

where. The court below awarded an injunction restraining defendant from holding herself out as competent to perform legal services, but decreed that she be permitted to engage in conveyancing and perform stenographic or notarial work authorized by law. The present appeal challenges the correctness of that decree.

The findings of fact state that defendant has advertised herself as specializing in the preparation of deeds, mortgages, releases, assignments and all other legal papers, but that these advertisements have been confined to circularizing real estate brokers and lawyers in Philadelphia. Appellee admits that in her business she has drawn a great variety of legal instruments, including wills, deeds of trust, bills of sale, leases, partnership agreements, and more than a thousand deeds and mortgages. In a few instances defendant placed in typewritten form instruments brought to her already written out, but in most cases she used forms containing blanks which she filled out with appropriate language, although occasionally she drafted the papers from information given her, using her own phraseology. Her net receipts in 1928 were approximately $4,500 and in 1929 were $3,600 but have been considerably less in recent years.

Appellants' bill was brought upon the theory that the Act of 1899, P. L. 117, as amended by the Act of April 17, 1913, P. L. 80, prohibits the unauthorized practice of law. The chancellor took the view that "this act is directed against the holding out to the public as being entitled to practice law without being regularly admitted to such practice by a court of record," and that "it would seem a fair thing to hold that performance of services, though they may in part be of a legal nature, is not necessarily practicing law unless, in violation of the Act of 1913, a person performing such services holds himself out to the public as a lawyer or as entitled to practice law or in some way deceive the public or his clients as to his status." The wording of the Act of 1913, supra, compels us to affirm the decree at this time.

However, subsequent to the hearing and decree nisi, but before final decree, the legislature, by an act approved April 24, 1933, further amended the Act of 1913 in such manner as to leave no doubt that the practice of law by unauthorized persons, as well as any illegal holding out as an attorney, is contrary to law and prohibited. The Act of 1933 was, of course, not before the chancellor at the time of his adjudication and would not apply to acts committed before its passage. In view of this latter legislation, however, we deem this an appropriate occasion to state its effect upon all cases of this character for the future. Our remarks will serve as a timely warning to individuals rendering services of a legal nature without proper authority.

The Act of April 28, 1899, P. L. 117, as amended by the Act of April 24, 1933, P. L. 66, provides in section 1: "From and after the passage of this act, it shall not be lawful for any person, partnership, association, or corporation, in any county in the State of Pennsylvania, to practice law, or to hold himself, herself, or itself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney-at-law, attorney and counsellor-at-law, counsellor, or the equivalent in any language, in such manner as to convey the impression that he, she, or it is a practitioner of the law of this or any other State, nation, country or land, or, in any manner, to advertise that he, she, or it, either alone or together with another person or persons, has, owns, conducts, or maintains a law office, or law and collection office of any kind, for the practice of the law of this or any other State, nation, country or land, without having first been duly and regularly admitted to practice law in a court of record of any county in this Commonwealth in accordance with the regularly established rules governing such admissions: Provided, however, That nothing herein contained shall be construed as prohibiting corporations of the first class, acting in good faith and in pursuance of the purposes of their charters, from ren-

dering, through attorneys-at-law, legal service to the members of such corporations."

Section 2 of the amended act makes violation of the act a misdemeanor and imposes a penalty of five hundred dollars fine, or imprisonment not exceeding one year, or both, in the discretion of the court.

After examination of the testimony we have no difficulty in reaching the conclusion that a large portion of defendant's business constitutes the practice of law, and since this is specifically prohibited to persons not authorized to do so, a continuation by defendant of the conduct complained of will subject her to liability for prosecution under the act or to an injunction restraining her from engaging in this practice. There is a wealth of authority for the proposition that the habitual drafting of legal instruments for hire constitutes the practice of law, even though the individual so engaged makes no attempt to appear in court or to give the impression he is entitled to do so. "According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients, and all action taken for them in matters connected with the law": Re Duncan, 83 S. C. 186; 24 L. R. A. (N. S.) 750; Ballentine's Law Dictionary, page 993. "The practice of law ......is not limited to the conduct of cases in courts, but embraces the preparation of pleadings and other legal papers and conveyances, and the giving of advice in matters connected with the law......": Words and Phrases (3d Series), page 8. See also Boykin v. Hopkins, 174 Ga. 511, and People v. People's Stock Yards State Bank, 344 Ill. 462.

There can be no objection to defendant continuing to act as a stenographer or notary public so long as her ac-

tivities in that regard do not retain the character of rendering professional services of a legal nature. Like any other individual, she is free to prepare legal documents under directions from a competent person, but it is definitely contrary to law for her to draft legal papers, such as wills, trust agreements, and instruments of that character, at her own discretion and charge a fee for the service rendered. The objection lies, not in the fact that it is unwise for a layman to draw an instrument of a legal nature, for individuals may freely draw their own contracts or write their own wills, but the substance of the offense is the habitual preparation, for a consideration, of legal documents for others. "To make it a business to practice as an attorney-at-law not being a lawyer is the crime. Therefore to prepare as a business legal instruments and contracts by which legal rights are secured and to hold oneself out as entitled to draw and prepare such as a business is a violation of the law": People v. Alfani, 227 N. Y. 334, 338. See also People v. Schreiber, 250 Ill. 345.

A number of realty boards have filed briefs as amici curiæ in which they envisage dire results to real estate brokers if laymen are prohibited from drafting legal instruments. There can be no objection to the preparation of deeds and mortgages or other contracts by such brokers so long as the papers involved pertain to and grow out of their business transactions and are intimately connected therewith. The drafting and execution of legal instruments is a necessary concomitant of many businesses and cannot be considered unlawful. Such practice only falls within the prohibition of the act when the documents are drawn in relation to matters in no manner connected with the immediate business of the person preparing them, and when the person so drafting them is not a member of the bar and holds himself out as specially qualified and competent to do that type of work. A real estate broker is not prohibited from drawing a deed of conveyance, or other appropriate

instrument relating to property of which he or his associates have negotiated a sale or lease. As stated in the concurring opinion of POUND, J., in People v. Title Guarantee & Trust Co., 227 N. Y. 366, 380: "The preparation of the legal papers may be ancillary to the daily business of the actor or it may be the business itself. The emphasis may be upon the services of the broker or the business of the trader or it may be upon the practice of law."

The strict regulation and control of persons who render legal services is as necessary and essential to the welfare of the public at large as the requirements for the practice of medicine or dentistry. A duly admitted attorney is an officer of the court and answerable to it for dereliction of duty. Except in proceedings of the character of the one now before us, the courts are powerless to supervise the unlicensed practitioner. In People v. Alfani, supra, pages 339, 340, in emphasizing that the qualifications demanded of applicants for admission to the bar are intended to protect the public from ignorance, inexperience and unscrupulousness, the court said: "Is it only in court or in legal proceedings that danger lies from such evils? On the contrary, the danger there is at a minimum for very little can go wrong in a court where the proceedings are public and the presiding officer is generally a man of judgment and experience. Any judge of much active work on the bench has had frequent occasion to guide the young practitioner or protect the client from the haste or folly of an older one. Not so in the office. Here the client is with his attorney alone, without the impartial supervision of a judge. Ignorance and stupidity may here create damage which the courts of the land cannot thereafter undo. Did the legislature mean to leave this field to any person out of which to make a living? Reason says no. Practicing law as an attorney likewise covers the drawing of legal instruments as a business."

No more need be said to indicate that in our opinion appellee has been practicing law and that such conduct

16

must cease.  For the reasons stated previously in this opinion, the decree of the lower court will be affirmed, but without prejudice to appellants to seek further relief by injunction or otherwise if appellee persists in the illegal practice of law.  To this end the bill should be retained by the court below and be subject to such further proceedings as may hereafter become necessary.

As herein modified, the decree of the court below is affirmed at appellee's costs.