[File No. 6409.]

JAMES P. CAIN, as President and Charles L. Foster, as Vice President of the Bar Association of North Dakota, an Unincorporated Association for the Benefit of Themselves and All Attorneys at Law Similarly Situated, Appellants, v. MERCHANTS NATIONAL BANK & TRUST COMPANY of Fargo, North Dakota, a National Banking Corporation, Respondent.

(268 N. W. 719.)

Opinion filed July 29, 1936.

*S. E. Ellsworth* and *Harry Lashkowitz,* for appellants.
*Nilles, Oehlert & Nilles* and *George W. Thorp,* for respondent.

MORRIS, J. In this action the plaintiffs seek an injunction "permanently enjoining and restraining the said defendant, its officers, agents, directors and attorneys from advertising that it maintains a legal department for the purpose of advising others and the public generally in legal matters; from preparing for others deeds, mortgages, contracts and other papers that may be properly and legally drawn and prepared in the practice of law, that it be permanently enjoined and restrained from the practice of law, that it be permanently enjoined and restrained from the practice of law as defined by this court in any and all of its particulars." This appeal is taken from a judgment of the district court dismissing the action. The complaint contains the allegation that "for a period of three years or more the said defendant . . . has advertised and at this time continues to advertise that it maintains a department for giving legal advice to the public generally as to the preparation of wills, the creation of trusts, the probate and administration of estates of deceased persons and generally connected with the devise, descent, and succession to real and personal property and still continues so to do." In support of this allegation the plaintiffs introduced in evidence five pamphlets or booklets which were distributed to the public at various times by the defendant in connection with the conduct of its business. Their contents may be summarized by stating that they contain general explanations of the desira-

bility and usage of wills and trust agreements, and soliciting the selection of the defendant as executor or trustee. The plaintiffs contend that these pamphlets conveyed to the public the idea that the defendant maintains a department for giving legal advice, particularly with reference to the preparation of wills and the creation of trusts.

A trust company undoubtedly has the right to advertise the fact that it is qualified to act as executor or trustee, and to give advice concerning financial and business matters generally. The defendant, through the testimony of its officers, disclaims any right to practice law and denies that it has advertised or intended to advertise that it is qualified to give legal advice. There is nothing in this advertising, as shown by the record which supports the plaintiffs' allegation. The booklet which plaintiffs most severely criticise entitled "Safeguarding Your Family's Future" deals with both wills and trusts. The statements therein contained can give the reader but a hazy idea of the nature of a trust, or of the procedure to be followed in probating an estate. No specific advice is offered in the booklet and no statement is made which would lead the reader to believe that a legal department was maintained by the defendant. On the other hand it contains the specific admonition that "the will is a very important instrument and should be drawn by competent legal authority." Three of the other pamphlets specifically refer to the advisability of employing a lawyer. When taken together these pamphlets indicate an advertising policy on the part of the defendant which is complimentary to the legal profession, and are of such a nature as to have a tendency to impress upon the public the expediency of employing lawyers to draw such important documents as wills and trust agreements.

The appellants cite the case of Eastern Idaho Loan & T. Co. 49 Idaho, 280, 288 P. 157, 73 A.L.R. 1323. In that case the trust company advertised "we make a specialty of drawing contracts, deeds and mortgages." It also advertised that "we make a business of advising in all matters and are specialists in drawing trust agreements, declarations of trust and wills." The advertising in that case frankly enters the field of practicing law, and the Idaho court so held. The advertising in this case is entirely different from that involved in the Idaho case. More in point here is the case of Re Umble, 117 Pa. Super. Ct. 15, 177 A. 340, in which advertisements

similar to those here involved were held to be a legitimate presentation to the public of the service offered by a trust company and did not constitute advertising by the trust company that it maintained an office for the practice of law.

The plaintiffs further contend that the defendant has actually engaged in practicing law, over such a period of time and to such an extent as to warrant the issuance of an injunction, despite the protests of the defendant's officers that it has not practiced law intentionally and does not intend to practice law in the future. In support of this contention the plaintiffs introduced a large number of exhibits, the most important of which will be considered by groups and in connection with oral testimony concerning the various documents. The first group consists of three wills. Mr. F. L. Dwight, assistant trust officer of the defendant, is an attorney duly licensed to practice law in this state. He is not engaged in general practice, but with the permission of the defendant has sometimes acted as an attorney in personal matters, generally for friends when such matters did not interfere with his duties as an employee of the defendant.

The first will (Exhibit No. 85) is dated July 8, 1929. A previous will by the same testator had been deposited with the Merchants National Bank and in which the Merchants National Bank was named as executor. The defendant became the successor to the Merchants National Bank and in order that the new corporation might be named as executor, Mr. Dwight redrafted the will. No charge was made for making the new will.

The next will (Exhibit No. 84) dated August 6, 1930, was drawn by Mr. Dwight for the testator who was the janitor for the defendant. He became seriously ill and Mr. Dwight was called to the hospital to draw his will. A few hours after its execution, the testator died. The defendant was named as executor in the will. Mr. Dwight charged a fee for drawing it, which was paid by the estate.

The third will (Exhibit No. 88) dated December 19, 1930, was drawn by Mr. Dwight for a director of the defendant bank. A fee was paid for this service. Later this will was revised by an attorney not connected with the defendant.

In the two instances where compensation was paid, it was retained

by Mr. Dwight personally. Testimony affirmatively shows that no wills have been drawn by the defendant, its officers or employees, since 1930.

The second group of seventeen exhibits consists of chattel mortgages, bills of sale and crop contracts in which the defendant is not named as a party and which were prepared by the defendant, its officers, or employees. Most of them involve settlements in which the bank was interested. In some cases the instruments so prepared were pledged to the bank as collateral security. Exhibit 8 is an exception to the general statement of facts just made regarding this group of instruments. Exhibit 8 is a contract and crop mortgage between W. C. Probert, as lessor, and Seraphina L. Yunkers, as lessee. The defendant was executor of the estate of the lessee's deceased husband. The instrument secured the rental of a quarter of land by a mortgage on the 1930 crop. The rental was payable to the lessor or the defendant bank.

Another exception is Exhibit 21, which was a chattel mortgage from Christ Jorgensen to the Horace G. Russell Estate, of which the defendant was administrator. Exhibit 22 is a chattel mortgage drawn by officers of the bank securing the purchase price of personal property sold at an auction sale at which officers of the defendant acted as clerks. Exhibit 62 represents a chattel mortgage drawn in 1932 between and for the accommodation of two of the bank's customers, and in which the bank appears to have had no interest.

The next group of eleven instruments consists of chattel mortgages in favor of the Argusville State Bank drawn by officers and employees of the defendant. The Argusville State Bank was in liquidation. Assets represented by the debts secured by these mortgages were in the hands of a liquidating committee of which the president and the trust officer of the defendant were members. These instruments were prepared by or under the direction of these members of the liquidating committee.

The next group consisting of six chattel mortgages running to the Mapleton State Bank presents a situation similar to that of the mortgages running to the Argusville State Bank. In both instances mortgages were taken as security for old debts and in the course of liquidation under the direction of members of the liquidating committee who were also officers of the defendant.

The next group consisting of ten chattel mortgages running to the

Regional Agricultural Credit Corporation of Minneapolis which were partly prepared in Minneapolis and completed by the officers or employees of the defendant, in accordance with instructions set out by the Regional Agricultural Credit Corporation. In connection with these loans distribution of the proceeds was made by the defendant in accordance with instructions received by it.

The final group of instruments is represented by Exhibit 91 which is a compilation from the records in the office of the register of deeds of Cass county. The instruments in question consist of quitclaim deeds, warranty deeds, real estate mortgages, extensions thereof, satisfactions, assignments of rents, and an executor's deed. Some of these instruments represent transactions connected with the settlement or securing of indebtedness due the bank, others were prepared in connection with a loan business which it conducted. It was the practice of the bank to make loans upon real estate for which a commission was charged. The mortgage was then sold to a client or customer, and the bank continued to act as the agent of the purchaser, collecting interest, looking after payment of taxes, and collecting the principal when due. In one instance the bank prepared an assignment of rents as additional security to its clients. In another instance it prepared an extension of mortgage between its client and the mortgagor.

Since 1919 the statutes of this state have contained the provision that "no person shall be entitled to practice law or act as attorney or counselor at law in this state unless such person shall first secure a certificate of admission to the bar." Section 811, Supplement to the 1913 Compiled Laws, as amended by chapter 143 of the Session Laws of 1933. The defendant does not claim the right to practice law, and it is clear from the record that it has no such right. Since it has no right to practice law directly, it cannot do so indirectly by employing a licensed attorney to practice for it, as that would be a mere evasion of the law. Re Co-operative Law Co. 198 N. Y. 479, 92 N. E. 15, 32 L.R.A.(N.S.) 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879; People ex rel. Los Angeles Bar Asso. v. California Protective Corp. 76 Cal. App. 354, 244 P. 1089; People v. Merchants Protective Corp. 189 Cal. 531, 209 P. 363; State ex rel. Lundin v. Merchants Protective Corp. 105 Wash. 12, 177 P. 694; Re Otterness, 181 Minn. 254, 232 N. W. 318, 73 A.L.R. 1319. Members of the legal profes-

sion are officers of the court and as such officers constitute an important branch of the system of administering justice. The Supreme Judicial Court of Massachusetts has said:

"Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments covering an extensive field of business and trust relations and other affairs. Although these transactions may have no direct connection with court proceedings, they are always subject to become involved in litigation. They require in many aspects a high degree of legal skill, a wide experience with men and affairs, and great capacity for adaptation to difficult and complex situations. These 'customary functions of an attorney or counsellor at law' . . . bear an intimate relation to the administration of justice by the courts. No valid distinction, so far as concerns the questions set forth in the order, can be drawn between that part of the work of the lawyer which involves appearance in court and that part which involves advice and drafting of instruments in his office. The work of the office lawyer is the ground work for future possible contests in courts. It has profound effect on the whole scheme of the administration of justice. It is performed with that possibility in mind, and otherwise would hardly be needed. . . . It is of importance to the welfare of the public that these manifold customary functions be performed by persons possessed of adequate learning and skill, of sound moral character, and acting at all times under the heavy trust obligation to clients which rests upon all attorneys. The underlying reasons which prevent corporations, associations and individuals other than members of the bar from appearing before the courts apply with equal force to the performance of these customary functions of attorneys and counsellors at law outside of courts. Decisions of the courts, some of which deal with statutes, are unanimous on these points, so far as we are aware." Re Opinion of Justices, — Mass. —, 194 N. E. 313, 317.

If compensation is exacted either directly or indirectly, "all advice to clients and all action taken for them in matters connected with the law" constitute practicing law. Re Duncan, 83 S. C. 186, 65 S. E. 210, 24 L.R.A.(N.S.) 750, 18 Ann. Cas. 657. "A person who gives

legal advice to those for whom he draws instruments, or holds himself out as competent to do so, does work of a legal nature, when the instruments he prepares either define, set forth, limit, terminate, specify, claim or grant legal rights." Paul v. Stanley, 168 Wash. 371, 12 P. (2d) 401. Many courts have been called upon to determine whether some phase of activity constitutes practicing law, and while they do not all contain comprehensive definitions, the following cases deal helpfully with this question. Re Pace, 170 App. Div. 818, 156 N. Y. S. 641; Barr v. Cardell, 173 Iowa, 18, 155 N. W. 312; Ferris v. Snively, 172 Wash. 167, 19 P. (2d) 942, 90 A.L.R. 278; Fitchette v. Taylor, 191 Minn. 582, 254 N. W. 910, 94 A.L.R. 356; State v. Bryan, 98 N. C. 644, 4 S. E. 522; Boykin v. Hopkins, 174 Ga. 511, 162 S. E. 796; People ex rel. Illinois State Bar Asso. v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901; Land Title Abstract & T. Co. v. Dworken, 129 Ohio St. 23, 193 N. E. 650.

In the recent case of Seawell v. Carolina Motor Club, 209 N. C. 624, 184 S. E. 540, the court said: "The practice of law is not limited to the conduct of cases in court. State v. Richardson, 125 La. 644, 51 So. 673. In a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be pending in court. Boykin v. Hopkins, 174 Ga. 511, 162 S. E. 796."

The exact scope of practicing law even under the best definitions laid down by the courts is not always readily discernible. The court in Re Opinion of Justices, — Mass. —, 194 N. E. 313, 317, supra, after defining generally the practice of law, said: "Individuals have been permitted to manage, prosecute or defend their own actions, suits and proceedings, and to defend prosecutions against themselves except when the public welfare demanded otherwise, and this does not constitute the practice of law. See Gen. Laws, Ter. ed. chap. 221, § 48; chap. 277, §§ 47, 48. The occasional drafting of simple deeds, and other legal instruments when not conducted as an occupation or yielding substantial income may fall outside the practice of the law. The gratuitous furnishing of legal aid to the poor and unfortunate without means in the pursuit of any civil remedy, as matter of charity, the search of records of real estate to ascertain what may there be disclosed with-

out giving opinion or advice as to the legal effect of what is found, the work of an accountant dissociated from legal advice, do not constitute the practice of law. There may be other kindred pursuits of the same character. All these activities, however, lie close to the border line and may easily become or be accompanied by practice of the law. The giving of advice as to investments in stocks, bonds and other securities, in real or personal property, and in making tax returns falls within the same category."

In Childs v. Smeltzer, 315 Pa. 9, 171 A. 883, it was held that a stenographer making a practice of drafting legal instruments for hire was engaged in practicing law. In considering what constitutes such practice, the court says: "The drafting and execution of legal instruments is a necessary concomitant of many businesses, and cannot be considered unlawful. Such practice only falls within the prohibition of the act when the documents are drawn in relation to matters in no manner connected with the immediate business of the person preparing them, and when the person so drafting them is not a member of the bar and holds himself out as specially qualified and competent to do that type of work. A real estate broker is not prohibited from drawing a deed of conveyance or other appropriate instrument relating to property of which he or his associates have negotiated a sale or lease. As stated in the concurring opinion of Pound, J., in People v. Title Guarantee & T. Co. 227 N. Y. 366, 380, 125 N. E. 666, 670: 'The preparation of the legal papers may be ancillary to the daily business of the actor or it may be the business itself. The emphasis may be upon the services of the broker or the business of the trader, or it may be upon the practice of law.' "

Both rules and exceptions must be applied with reason. A careful study of the many decisions of the courts relative to what constitutes practicing law when applied to the facts in this case, leads us to the conclusion that a person who is not a member of the bar may draw instruments such as simple deeds, mortgages, promissory notes, and bills of sale when these instruments are incident to transactions in which such person is interested provided no charge is made therefor. These simple instruments are usually prepared upon or with the aid of printed forms and seldom involve a high degree of legal skill. The

drawing of complicated legal instruments such as wills or trust agreements require more legal knowledge than is possessed by the average layman. They must be framed from a mass of facts so as to convey the intention of the parties and bring about a desired legal result. One who draws such instruments for others practices law even though such instruments might, to some extent, be incident to a business such as that usually conducted by trust companies.

In this case the facts disclose that in some instances the defendant has invaded the field of legal practice. The wills which we have previously mentioned constitute isolated instances of practicing law. The defendant had a right to draw chattel mortgages and bills of sale which involved settlements in which it was interested, or which were drawn for the purpose of being pledged to the defendant as collateral security.' It stepped out of its lawful field if it drew chattel mortgages for the accommodation of its customers in transactions in which the bank had no interest. We see no impropriety in the instruments which were drawn in connection with the liquidation of the Argusville State Bank and the Mapleton State Bank. They involved either transactions in which the defendant was interested, or which were being handled by liquidating committees of which the defendant's officers were members. Neither can we condemn the defendant for completing chattel mortgages for and under the special direction of the Regional Agricultural Credit Corporation of Minneapolis, for which the defendant acted as disbursing agent. The group of instruments represented by Exhibit 91 appear to be simple instruments which were drawn as an incident to the defendant's loan business, or in connection with settlements with the bank, and cannot reasonably be said to constitute practicing law.

The remaining question to be disposed of is whether an injunction shall issue. It does not appear that any of the defendant's officers gave legal advice or rendered legal services except in the isolated instances of the instruments which we have mentioned. These instances are widely separated in point of time. Most of them occurred at least a year prior to the commencement of this action. The defendant asserts that it has never intended to practice law and disavows any intention to practice law in the future. The trial court was satisfied that there is nothing in this record warranting the issuance of an in-

756

junctional order. Our review of the case brings us to the same conclusion.

Affirmed.

BURKE, Ch. J., and NUESSLE and BURR, JJ., concur.

CHRISTIANSON, J., did not participate.