GRAND RAPIDS BAR ASS'N v. DENKEMA.

1. ATTORNEY AND CLIENT—APPEARANCE IN COURT.
    A suitor in any court of the State has the right to prosecute or defend his suit either in his own person or by an attorney of his choice (Const. 1908, art. 2, § 12).

2. SAME—PERSONS AUTHORIZED TO PRACTICE AS ATTORNEY.
    The word attorney, when used in connection with proceedings of courts, and authority to conduct business in them, as well as when employed in a general sense with reference to transaction of business usually and almost necessarily confided to the members of the legal profession, has a fixed and universal signification common to both technical and popular usage as having reference to a class of persons who are by license constituted officers of courts of justice and who are empowered to appear and prosecute and defend, and upon whom peculiar duties, responsibilities and liabilities are devolved by law in consequence (3 Comp. Laws 1929, § 13587).

3. SAME—EXCLUSIVE FUNCTIONS OF ATTORNEY.
    In a case in court, determination of steps to be taken and control of procedure and proceedings to enforce the remedy are exclusively functions of an attorney at law, where a party does not appear in his own person (3 Comp. Laws 1929, § 13587).

4. SAME—RIGHTS AND DUTIES.
    Rights and duties arising out of relationship of attorney and client are not measured by yardstick of commercial or trade transactions, but relation is purely personal, lawyer owes to his client undivided allegiance, and there is no place in relationship for its establishment by middleman having interest in *res* or control of procedure (3 Comp. Laws 1929, § 13587).

5. SAME—PRACTICE OF LAW—DRAFTING AGREEMENTS, CORPORATION PAPERS, WILLS, CONVEYANCES.
    Counsel and advice, drawing of agreements, organization of corporations and preparing papers connected therewith, draft-

ing of legal documents of all kinds, including wills and conveyances, are activities long classed as practice of law, such practice not being confined to the conduct of cases in courts (3 Comp. Laws 1929, § 13587).

6. SAME—PREPARATION OF PAPERS RELATIVE TO LEGAL RIGHTS—ADVICE.

The practice of law is not confined to the practice in courts of the State, but it includes the preparation of pleadings and other papers incident to any action or special proceeding in any court or other judicial body, conveyancing, the preparation of all legal instruments of all kinds whereby a legal right is secured, the rendering of opinions as to the validity or invalidity of the title to real estate or personal property, the giving of legal advice in any action taken for others in any matter connected with the law (3 Comp. Laws 1929, § 13587).

7. SAME—INTERMEDIARIES—PREPARATION OF WILLS.

One whose business includes practice of taking notes and drafting an outline of a testator's suggestions and submission to an attorney for use in drafting a will would be a middleman, an intermediary between the attorney and client, and such person must be licensed to practice law (3 Comp. Laws 1929, § 13587).

8. SAME—PREPARATION OF WILLS.

The preparation of wills for others is the practice of law and may not be carried on by one not a licensed attorney (3 Comp. Laws 1929, § 13587).

9. NOTARIES—CIVIL LAW—REQUIREMENTS FOR APPOINTMENT IN MICHIGAN.

Under the civil law, a notary public must prepare for his avocation, be admitted to practice, and is subject to rules and regulations by the government, while in this State he need not be skilled in legal matters but need only be 21 years of age, a citizen of the State, and resident of the county in which appointment is desired (1 Comp. Laws 1929, § 1403).

10. ATTORNEY AND CLIENT—CONVEYANCES—PRACTICE OF LAW.

The preparation of conveyances of real and personal property for others for a consideration comes within the usual and ordinary definitions of practice of law (3 Comp. Laws 1929, § 13587).

11. SAME—PRACTICE OF LAW—DRAFTING PAPERS—AMANUENSIS.
    The mere act of drawing a promissory note, chattel mortgage, real estate mortgage, deed or other similar instruments would not constitute the practice of law where the person so drawing them acts merely as an amanuensis and does not advise or counsel as to the legal effect and validity of such instruments (3 Comp. Laws 1929, § 13587).

12. SAME—PRACTICE OF LAW—STATUTES—CLERKS—STENOGRAPHERS—NOTARIES.
    The statute relating to the practice of law does not in any way affect the right of persons to act as clerks, stenographers, or notaries public so long as they act within the usual and ordinary scope of such employment, but such employment gives them no right to practice law (3 Comp. Laws 1929, § 13587).

13. SAME—PRACTICE OF LAW—STATUTES—CONVEYANCES.
    The statute requiring that one who practices law be licensed to do so is aimed at the practice of law, not to the performance of acts incidental to the transfer of property by particular individuals (3 Comp. Laws 1929, § 13587).

14. COURTS—PROBATE—PRACTICE OF LAW.
    Probate courts in this State are courts of record and the conduct of proceedings therein constitutes the practice of law (Const. 1908, art. 7, § 17; 3 Comp. Laws 1929, §§ 13587, 13869).

15. SAME—EXECUTORS AND ADMINISTRATORS—GUARDIANS.
    An executor, administrator or guardian, as such, has no right to conduct probate proceedings except in matters where his personal rights as representative are concerned (3 Comp. Laws 1929, §§ 13587, 13869).

16. ATTORNEY AND CLIENT—PROBATE COURTS—CONDUCT OF PROCEEDINGS AND RENDERING ADVICE—PRACTICE OF LAW.
    Activities of person not licensed to practice law, in connection with probate of estates in which he was not personally interested, such as drafting papers, petitions and orders and giving advice ith regard to probating estates, *held,* within prohibition of statute barring from the practice of law persons not licensed to do so, hence injunction barring him from such law business was proper (3 Comp. Laws 1929, §§ 13587, 13869).

WIEST and NORTH, JJ., dissenting in part.

Appeal from Kent; Verdier (Leonard D.), J. Submitted October 5, 1938. (Docket No. 44, Calendar No. 40,227.) Decided September 5, 1939.

Bill by Grand Rapids Bar Association, a nonprofit corporation, and F. Roland Allaben and Benn M. Corwin against Henry Denkema to enjoin certain acts. Decree for plaintiffs. Defendant appeals. Modified and affirmed.

*Kenneth P. Hansma* (*F. Roland Allaben* and *Benn M. Corwin,* of counsel), for plaintiffs.

*Dorr Kuizema* and *Cornelius Hoffius,* for defendant.

*Dean W. Kelley,* Chairman Unauthorized Practice of Law Committee, State Bar of Michigan (*George E. Brand,* of counsel), *amicus curiæ.*

POTTER, J. Plaintiffs, Grand Rapids Bar Association, F. Roland Allaben and Benn M. Corwin, trustees and members of a committee of the Grand Rapids Bar Association on the unauthorized practice of the law, filed bill of complaint in the circuit court for Kent county against Henry Denkema to enjoin him from doing certain things, and for other relief as defendant's conduct might merit.

Defendant is a resident of the city of Grand Rapids, not a licensed attorney and counselor at law, who has for a number of years been engaged in the business of general insurance and real estate loans under the firm name of Herman N. Dosker & Company. Defendant is not personally a licensed real estate broker and has never sold real estate. He testified:

"In my business of making loans, I have for a number of years past been examining abstracts and

giving opinions on them prior to the bringing of this suit. I have also been in the habit of drawing leases, land contracts, deeds and mortgages for other people. That has been customary with me for a number of years, even while Mr. Dosker [who owned the business before defendant] was alive, as his clerk. I have been in the habit of charging a fee for that work. I have also drawn wills for other people. I haven't done much of that in the last three or four years. I have turned them over to attorneys for drawing. I had been drawing some wills, not always. I have never engaged in that very actively. I have in matters that I was not the administrator, executor or guardian appeared in the probate court and prepared petitions and orders and secured orders for the sale of real estate. I also carried on the general probate of various estates prior to the commencement of this suit. I have done that quite frequently during the years. I have also given people advice in regard to the probating of estates. I have also advised them in regard to the proper proceedings either to sell or mortgage estate property, very often helping to settle estates. * * *

"As far as the drafting of wills, I haven't been drafting any wills in the last few years. People that come to me about wills come to the office and talk to me about how they want their property distributed in case of their death, whom they want appointed executor. I take the notes on it and take the notes to an attorney, and he drafts the will. That has been my practice for the last number of years. * * *

"In the matter of drafting leases, deeds and mortgages, that has constituted for some years past a large part of my business,—larger than the making of deeds, mortgages, et cetera, in connection with the loans. I consider it would be depriving me of a large part of my income if that were taken away from me.

"It is these men of Holland clientele that have confidence in me that have been coming to our office

for 40 years or more that I desire to serve mostly, on all manner of business, when they have a house to sell or mortgage or something like that. They would probably make their own sales and come to us for the drawing of the deeds and contracts and mortgages. That has constituted a large part of our business for 40 years or more."

The trial court enjoined defendant from drafting any proposed will, outline, or suggestion thereof for another; preparing and filing papers in connection with the probating and appearing in probate court for the purpose of obtaining orders and decrees, except in cases in which he acts as guardian, administrator, executor or trustee; advising persons in connection with the probating of estates; examining and giving opinions on abstracts of title of real property; preparing for others legal instruments incidental to the sale, leasing or mortgaging of real property, except in cases in which he is one of the parties in interest; practicing law and performing legal services for and giving legal advice to others, in Michigan. Defendant appeals from portions of the decree of the trial court, urging that he should be allowed to do some of the things which the trial court enjoined him from doing.

"Any suitor in any court of this state shall have the right to prosecute or defend his suit, either in his own proper person or by an attorney or agent of his choice." Const. 1908, art. 2, § 12.

In *Cobb* v. *Judge of Superior Court of Grand Rapids,* 43 Mich. 289, this court held that by "an attorney or agent" was meant an attorney, and it denied the right of a disbarred attorney to represent the defendant as an agent in a court of record.

"The word *attorney,* when used in connection with the proceedings of courts, and the authority to conduct business in them, as well as when employed in

a general sense with reference to the transaction of business usually and almost necessarily confided to members of the legal profession, has a fixed and universal signification on which the technical and popular sense unite. The legislator and the judge, the lawyer and the layman, understand it alike as having reference to a class of persons who are by license constituted officers of courts of justice, and who are empowered to appear and prosecute and defend, and upon whom peculiar duties, responsibilities and liabilities are devolved by law in consequence." *People, ex rel. Hughes, v. May,* 3 Mich. 598.

In *Detroit Bar Association* v. *Union Guardian Trust Co.,* 282 Mich. 216, quotation was made from *Hightower* v. *Detroit Edison Co.,* 262 Mich. 1 (86 A. L. R. 509), as follows:

"In a case in court, determination of the steps to be taken and control of procedure and proceedings to enforce the remedy are exclusively functions of an attorney at law, where a party does not appear in his own person. * * *

"The rights and duties arising out of the relationship of attorney and client are not measured by the yardstick of commercial or trade transactions. The relation is purely personal. The lawyer owes to his client undivided allegiance. There is no place in the relationship for its establishment by a middleman having an interest in the *res* or control of the procedure."

"Counsel and advice, the drawing of agreements, the organization of corporations and preparing papers connected therewith, the drafting of legal documents of all kinds, including wills, are activities which have long been classed as law practice." *People* v. *Alfani,* 227 N. Y. 334, 338 (125 N. E. 671).

"The practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country,

it embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law." *In re Duncan,* 83 S. C. 186 (65 S. E. 210, 24 L. R. A. [N. S.] 750, 18 Ann. Cas. 657).

"The practice of the law is the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court." *Eley* v. *Miller,* 7 Ind. App. 529 (34 N. E. 836).

"Persons acting professionally in legal formalities, negotiations, or proceedings by the warrant or authority of their clients may be regarded as attorneys-at-law within the meaning of that designation as used in this country." *Savings Bank* v. *Ward,* 100 U. S. 195.

The practice of law is not confined to the practice in courts of the State, but it includes the preparation of pleadings and other papers incident to any action or special proceeding in any court or other judicial body, conveyancing, the preparation of all legal instruments of all kinds whereby a legal right is secured, the rendering of opinions as to the validity or invalidity of the title to real estate or personal property, the giving of legal advice in any action taken for others in any matter connected with the law. *Boykin* v. *Hopkins,* 174 Ga. 511 (162 S. E. 796).

"Practice of law under modern conditions consists in no small part of work performed outside of any court and having no immediate relation to proceedings in court. It embraces conveyancing, the giving of legal advice on a large variety of subjects, and the preparation and execution of legal instruments covering an extensive field of business and trust relations and other affairs. Although these transactions may have no direct connection with court proceedings, they are always subject to become involved in litigation." *Opinion of the Justices,* 289 Mass. 607, 613 (194 N. E. 313).

The statute (3 Comp. Laws 1929, § 13587 [Stat. Ann. § 27.81]) provides:

"It shall be unlawful for any person who is not a regularly licensed attorney and counselor of this State, * * * to practice law or to engage in the law business."

It would be extremely difficult to formulate an accurate definition of the "practice of law" which might endure, for the reason that under our system of jurisprudence such practice must necessarily change with the everchanging business and social order.

The matters which were properly before the court, the doing of which by the defendant he claims was improperly restrained, fall within the general headings of drafting wills, operating in probate court and probate matters, and preparing legal instruments. Defendant does not complain of those portions of the decree of the trial court which enjoin him from examining abstracts and giving opinions thereon and from practicing law and performing legal services and giving legal advice to others.

It is defendant's contention that although he may not be legally permitted to draft a proposed will, he should be allowed to draft an outline of the testa-

tor's suggestions for use by an attorney to draft the will. It is his practice to take notes of what people who consult him want regarding the distribution of their property in case of death, which notes he takes to an attorney who drafts the will. This is a part of defendant's business. He desires to hold himself out as a middleman,—an intermediary between the attorney and client. This activity on his part was passed upon adversely to defendant's contention in *Hightower* v. *Detroit Edison Co., supra.* There is no doubt that the preparation of wills for others is the practice of law, *Detroit Bar Association* v. *Union Guardian Trust Co., supra,* and may not be carried on by one not a licensed attorney.

It is suggested that notaries public have a right to draft legal instruments for others in matters in which they have no legal interest. There is much confusion as to the extent of the powers of notaries public resulting probably in part from the difference between the authority, powers and duties of notaries public under the civil law and under the common law. Under the civil law, a notary public must prepare for his avocation, be admitted to practice, and is subject to rules and regulations by the government. But in England, the right to draw or prepare, for or in expectation of any fee or reward, any instrument relating to real or personal estate or any proceedings in law or equity, is limited by statute to barristers, certificated solicitors, notaries public, special pleaders and draftsmen in equity. The object of the enactment is to confine the practice of drawing such instruments to a class of persons supposed to have a competent knowledge of the subject and to protect the public against the mistakes of inexperienced persons. 2 Halsbury's Laws of England, p. 378. But there, a general notary must have been bound by written contract or by indenture of apprenticeship

to serve as clerk and apprentice to a fully qualified
notary in actual practice for a period of seven or
five years depending on where he intends to prac-
tice. Brooke's A Notary of England, by Cranstoun
(8th Ed.), p. 31; Proffatt on Notaries (2d Ed.),
p. 13. While in this State a notary public need not
be skilled in legal matters; here a notary must be 21
years of age, a citizen of the State, and a resident of
the county in which he or she desires to be appointed.
1 Comp. Laws 1929, § 1403 (Stat. Ann. § 5.1041).

The preparation of conveyances of real estate and
personal property by the defendant for others, for
a consideration, comes within the usual and ordinary
definitions of ''practice of law.'' The preparation
of legal papers in connection with his business as a
loan broker has been held to be the practice of law.
*Ferris* v. *Snively,* 172 Wash. 167 (19 Pac. [2d] 942,
90 A. L. R. 278); *State, ex rel. Wright,* v. *Barlow,*
131 Neb. 294 (268 N. W. 95).

In *People* v. *Alfani, supra,* defendant held himself
out as entitled to draw and prepare legal instru-
ments such as contracts for real estate, deeds, mort-
gages, bills of sale, and wills, as a business, notwith-
standing the statute prohibiting anyone from prac-
ticing law or holding himself out as being entitled to
practice law unless he was a regularly licensed and
admitted attorney. Such activities upon the part of
the defendant were held to be a part of the practice
of law.

In *Paul* v. *Stanley,* 168 Wash. 371 (12 Pac. [2d]
401), defendant, a notary public and real estate
broker who was not a lawyer, was restrained from
preparing for others, as a business, deeds, mort-
gages, leases, agreements, contracts, bills of sale,
chattel mortgages, wills, notes, conditional sales con-
tracts, options, powers of attorney, community prop-
erty agreements, liens, bonds, mortgage assignments,

mortgage releases, chattel mortgage satisfactions, notices to vacate premises, notice to quit or pay rent, or any other documents requiring the use of knowledge of law in their preparation.

In *Re Matthews*, 57 Idaho, 75 (62 Pac. [2d] 578, 111 A. L. R. 13), it was held that the practice of law includes legal advice and counsel and the preparation of instruments and contracts by which legal rights are secured, although such matters may or may not be depending in a court.

In *State, ex rel. Wright,* v. *Barlow, supra,* it was said:

"We do not desire to be understood as saying that the mere act of drawing a promissory note, chattel mortgage, real estate mortgage, deed or other similar instruments would constitute the practice of law, where the person so drawing them acts merely as an amanuensis and does not advise or counsel as to the legal effect and validity of such instruments."

The statute relating to the practice of the law does not in any way affect the right of persons to act as clerks, stenographers, or notaries public so long as they act within the usual and ordinary scope of such employment, but the fact that one may be a stenographer, clerk or notary public gives him no right to practice law.

The statute is aimed at the practice of law, not to the performance of acts incidental to the transfer of property by particular individuals. *Cain* v. *Merchants National Bank & Trust Co.,* 66 N. D. 746 (268 N. W. 719); *People* v. *Title Guarantee & Trust Co.,* 227 N. Y. 366 (125 N. E. 666).

"The prohibition against unqualified persons acting as solicitors applies to the taking of instructions for or preparation of papers on which to found or oppose a grant of probate or letters of administration." 26 Halsbury's Laws of England, p. 857.

Probate courts in Michigan are courts of record. Const. 1908, art. 7, § 17; 3 Comp. Laws 1929, § 13869 (Stat. Ann. § 27.447). Conducting proceedings in probate courts constitutes the practice of law.

An executor, administrator, or guardian as such has no right to conduct probate proceedings except in matters where his personal rights as representative are concerned. *In re Otterness,* 181 Minn. 254 (232 N. W. 318, 73 A. L. R. 1319).

In *State, ex rel. Wright,* v. *Barlow,* 132 Neb. 166 (271 N. W. 282), a widow called at the office of defendant, who was not a lawyer, in relation to the probate of her husband's estate. Defendant undertook to handle the administration of the estate, filed a petition for the probate thereof, and caused notice of hearing thereon to be published. He advised the widow relative to the payment of debts and the collection of accounts and the procedure to be followed in probating the estate. The court said: "This clearly constitutes the practice of law."

In *Re Brainard,* 55 Idaho, 153 (39 Pac. [2d] 769), a former probate judge, who had never been admitted to practice law, was found guilty and fined for contempt of court for having engaged in the practice of law by advising persons in matters of estates, preparing various types of papers and pleadings for the purpose of securing the probate of estates. Though he did not set forth his name in any of the papers as an attorney, he did the work in connection with the probate of estates such as is ordinarily done by an attorney.

In *Ferris* v. *Snively, supra,* a law clerk, not a licensed attorney, brought suit against the estate of the lawyer for whom he worked. Among other things, he claimed to have handled probate matters by appearing in court, preparing papers, presenting papers and representing parties generally in the pro-

bate court. It was held the services rendered fell within the term "practice of law."

The activities of the defendant in connection with the probate of estates in which he was not personally interested come within the prohibition of the Michigan statute. Defendant was properly enjoined from practicing law, or engaging in the law business, in violation of 3 Comp. Laws 1929, § 13587.

The decree of the trial court will be modified in accordance herewith, and affirmed.

BUSHNELL, SHARPE, CHANDLER, and McALLISTER, JJ., concurred with POTTER, J.

NORTH, J. (*dissenting in part*). Because of the character of quotations made with seeming approval by Mr. Justice POTTER from cases adjudicated in other jurisdictions defining what constitutes the practice of law, I cannot unqualifiedly subscribe to the opinion written by him. Recently we said:

"Even if possible, it is not practical or advisable to attempt specific definition of 'practice of law.' The few efforts to do so have added little to general characterization." *Detroit Bar Association* v. *Union Guardian Trust Co.,* 282 Mich. 216, 220.

Because of the difficulty of definition, in each case, especially a borderline case, the question of whether there is unauthorized practice of law should be determined in the light of facts therein presented. And in this connection distinction may well be made between mere isolated activities or transactions and a regular course of business engaged in by one charged with unauthorized practice of law. I cannot unqualifiedly approve my Brother's quotations from other jurisdictions which hold that the practice of law includes "drawing agreements," "conveyancing," and "preparation of contracts;" nor do I

agree with my Brother's holding that ''the preparation of conveyances of real estate and personal property by the defendant for others for a consideration comes within the usual and ordinary definition of 'practice of law;' '' or that defendant may not prepare the papers incident to the transactions of his own business as a loan broker.

If no one but a licensed attorney may lawfully draw an agreement or prepare a contract, then the bank clerk who prepares a simple promissory note for a customer to sign is guilty of unauthorized practice of law. Likewise, in event a farmer desires to agree with a grain purchaser that the former will sell his crop to the latter at a fixed price and the memorandum of such transaction, which amounts to a contract, is prepared by the grain buyer's clerk, he too is guilty of unauthorized practice of law. It is fitting that courts should be zealous in protecting the legal fraternity in its exclusive right to practice law. But is is more than probable that excessive zeal along this line resulting in absurd decisions will be boomerangs producing legislation which will materially narrow, instead of widening, the present field of the practice of law in which attorneys now have the exclusive right to function. Because of the character of this litigation we should avoid generalization and be content with decision of the specific questions herein presented by appellant.

(1) The trial court restrained defendant from ''practicing law'' and ''performing legal services for and giving advice to others in Michigan.'' If proper construction is given to the words ''legal services'' and ''legal advice'' as used in this decree, these restraining provisions are proper. But instead of being couched in these general and indefinite terms, the restraining provisions of the decree should be specific and confined to the particular issues upon

which plaintiffs have prevailed. The noted general
and indefinite provisions should either be eliminated
from the decree or restricted in their operation to
the other specific restraining provisions of the de-
cree.

(2) The trial court also restrained defendant
from preparing and filing papers in connection with
the probate of estates and from appearing in pro-
bate court for the purpose of obtaining orders and
decrees, except in cases wherein defendant was act-
ing as guardian, administrator, executor or trustee;
and from advising persons in connection with the
probating of estates. The record in this case justi-
fied the court in so decreeing.

(3) The trial court likewise enjoined defendant
from "drafting any proposed will or trust agree-
ment or proposed form, outline or suggestion there-
of for another." There was no occasion for enjoin-
ing defendant from drafting a proposed will or trust
agreement, because the undisputed testimony is that
defendant had not engaged in this type of business
for a number of years preceding institution of this
suit. He should not be enjoined from doing some-
thing which he has neither done nor contemplates
doing.

"A court cannot entertain an injunction bill sim-
ply because no material injury would accrue to de-
fendants by the injunction; but, on the contrary, the
court requires in all cases a sufficient showing to be
made of threatened injury entitling the complainant
to equitable relief." *Bates* v. *City of Hastings,* 145
Mich. 574, 583.

See, also, *Dutch Cookie Machine Co.* v. *Vande
Vrede,* 289 Mich. 272.

But, for reasons expressed by my Brother, appel-
lant properly was restrained from acting in the regu-
lar course of his business as an intermediary be-

tween attorneys and clients in the preparation of wills. *Hightower* v. *Detroit Edison Co.,* 262 Mich. 1 (86 A. L. R. 509); *Detroit Bar Ass'n* v. *Union Guardian Trust Co., supra.*

(4) By the decree entered in circuit court defendant is also restrained from "examining and giving opinions on abstracts of title of real property." Neither in his "reasons and grounds for appeal" nor in a "statement of questions involved" (Court Rule No. 67, § 1 [1933]), does appellant complain of this provision in the circuit court's decree. Hence there is no occasion for its consideration or modification on this appeal.

(5) By the remaining provision of his decree the circuit judge restrained defendant from preparing for others instruments incidental to the sale, leasing or mortgaging of real estate, "except in cases in which you are one of the parties in interest." The acts enumerated in this paragraph do not constitute practice of law notwithstanding they are performed by one who is not an attorney; provided, as is the fact in the instant case, the enumerated activities are merely incidental to such person's principal business.

In this connection it may be noted that by plain and necessary implication the legislature of this State has indicated that the business of conveyancing is not the practice of law. The statute which regulates licensing of real estate brokers and salesmen provides that applicants for such licenses shall be required to pass an examination showing that the applicant has "a fair understanding of the laws and principles of real estate conveyancing, deeds, mortgages, land contracts, leases." 2 Comp. Laws 1929, § 9813; and as amended by Act No. 148, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 9813, Stat. Ann. § 19.798). Surely the legislature when embodying such a provision in the statute could not have understood that conveyancing was a business or activity

which could not be carried on by realtors, but instead only by licensed attorneys. Further, it appears from this record that the legislature in passing various amendments to the law governing realtors (see Act No. 188, Pub. Acts 1937) refused to embody therein the following: "That a real estate salesman shall not draft or prepare any such papers," *i.e.*, papers incidental to transactions consummated in his office. House Bill No. 349, Session 1937–1938.

This portion of the decree can be sustained only by holding that it is unlawful for one not admitted to the practice of law to do conveyancing, even though it is incidental to his principal business; as in the instant case conveyancing is a natural incident to defendant's business of making loans. The decree excepts from this provision only transactions to which defendant is a party in interest. Under like injunctive decrees one not admitted to the practice of law would be deprived of the right that has always existed in this State to draft deeds, mortgages, leases, et cetera, when doing so was only incidental to one's principal business. It was pointed out in *Detroit Bar Association* v. *Union Guardian Trust Co., supra,* quoting from *In re Cannon,* 206 Wis. 374, 395 (240 N. W. 441) that:

"The legislature may establish such qualifications as it chooses for those who are permitted to act as conveyancers, examiners of title, organizers of corporations, or any other type of legal services which does not give them power to influence the course of justice as administered by the courts."

There are numerous decisions holding that conveyance by a layman when carried on only incident to his principal business is not unauthorized practice of law.

"The drafting and execution of legal instruments is a necessary concomitant of many businesses and

cannot be considered unlawful. Such practice only falls within the prohibition of the act [forbidding unauthorized practice of law] when the documents are drawn in relation to matters in no manner connected with the immediate business of the person preparing them, and when the person so drafting them is not a member of the bar and holds himself out as specially qualified and competent to do that type of work. A real estate broker is not prohibited from drawing a deed of conveyance, or other appropriate instrument relating to property of which he or his associates have negotiated a sale or lease. As stated in the concurring opinion of Pound, J., in *People* v. *Title Guarantee & Trust Co.*, 227 N. Y. 366, 380 (125 N. E. 666, 670): 'The preparation of the legal papers may be ancillary to the daily business of the actor or it may be the business itself. The emphasis may be upon the services of the broker or the business of the trader or it may be upon the practice of law.' "  *Childs* v. *Smeltzer*, 315 Pa. 9, 14 (171 Atl. 883).

See, also, *People* v. *Title Guarantee & Trust Co.*, 227 N. Y. 366 (125 N. E. 666), which reviews the decision of the lower court reported in 180 App. Div. 648 (168 N. Y. Supp. 278); *Cain* v. *Merchants National Bank & Trust Co.*, 66 N. D. 746 (268 N. W. 719).

Courts ought not to attempt to extend the exercise of their inherent powers controlling the practice of law so as to include activities which are clearly more appropriately the subject of legislative regulation. Government by injunction should be limited to its proper scope and field. It should not be extended to phases of human activity which are more properly subject to control by the legislature. The test of whether the control or regulation of an activity said to constitute the practice of law is one exclusively within the inherent powers of a court is whether or not it in any way tends to impair the ability of the

court to function properly.   In deciding the application for a reconsideration of our denial of a rehearing in *Detroit Bar Ass'n* v. *Union Guardian Trust Co.*, 282 Mich. 707, we said:

"Our Constitution has vested the courts with inherent power to regulate the practice of law to the extent that is reasonably necessary for their proper functioning.   Legislative regulation is unconstitutional when, and only when, it tends to impair the proper administration of judicial functions."

Plaintiffs herein are not basing any claim of right to relief on any legislative enactment expressly restricting or forbidding defendant as a layman from engaging in preparation of instruments of conveyance.   Therefore the injunctive relief to which plaintiffs are entitled is limited to such as the court may properly grant by reason of its inherent power to preserve its own ability to function.   The trial court exceeded its inherent powers and was in error in decreeing injunctive relief whereby defendant was enjoined from preparing deeds, mortgages, leases of real estate, et cetera, as incidental to his loan business.   Doing so clearly has nothing whatever to do with and in no way tends to impair "the proper administration of judicial functions."

Our decision herein as to conveyancing is restricted to the facts of the instant case wherein such activity was carried on by defendant incident to his principal business.   We do not pass upon the question of whether conveyancing or drafting contracts when carried on as an independent business is or is not the practice of law.   The decree entered in the trial court should be modified in accordance herewith.   Neither party has fully prevailed on this appeal and no costs are awarded.

WIEST, J., concurred with NORTH, J.   BUTZEL, C. J., did not sit.