CAPE MAY COUNTY BAR ASSOCIATION *ET AL.*, PLAINTIFFS-RESPONDENTS, v. JOHN LUDLAM, DEFENDANT-APPELLANT.

Argued March 29, 1965—Decided June 28, 1965.

*Mr. Morton I. Greenberg* argued the cause for respondents, Cape May County Bar Association, Maurice Hayman and James A. O'Neill.

*Mr. Milton T. Lasher* argued the cause for plaintiff-intervenor, New Jersey State Bar Association.

*Mr. George M. James* argued the cause for appellant, John Ludlam.

The opinion of the court was delivered

PER CURIAM. The Cape May County Bar Association (later joined by the New Jersey State Bar Association, as intervening plaintiff) brought suit against John Ludlam, charging that he is not a licensed attorney; that he engages in the preparation of legal instruments for others; and that such conduct is unlawful and constitutes the illegal practice of law.

From a summary judgment in favor of plaintiff, permanently enjoining defendant from "engaging in the practice of law by drawing bonds, mortgages, deeds, warrants, releases of mortgages, affidavits and other legal instruments" and further enjoining him "from holding himself out as carrying on and from carrying on a conveyancing business," defendant appealed to the Appellate Division. This Court certified the

matter on its own motion before argument there. *R. R.* 1:10–1.

The facts are not in dispute. The defendant is the third generation of Ludlams who have searched and abstracted titles, sold title insurance and prepared deeds, bonds, mortgages and other legal instruments in Cape May Court House, New Jersey. The defendant graduated from the University of Virginia and attended one year of its law school. Since his father's death in 1957 he has been the sole proprietor of the business, which he categorizes as a "title searching and conveyancing business." The defendant admits that part of the complaint which charges:

"5. Defendant in the course of his business at the said place draws deeds, bonds, warrants, mortgages, releases of mortgages, affidavits and other legal instruments. In addition defendant carries and holds himself out as carrying on a general business dealing with the conveyancing of real estate. From time to time defendant charges a consideration for the aforesaid services.,"

but denies that such acts constitute the unauthorized practice of law. Any merit there might have been to such a contention was foreclosed by this Court in *New Jersey State Bar Ass'n v. Northern N. J. Mtge. Associates,* 32 *N. J.* 430, 444 (1960), where we held that:

"The drawing of legal instruments [*e.g.*, bonds and mortgages] by the Title Company for others (particularly, where as here, it is compensated) is clearly within the traditional definition of the practice of law and nonetheless so where the drawing consists in the filling in and completion of legal forms."

See also *Jeffcott v. Erles,* 84 *N. J. Super.* 70, 74 (*Cty. Ct.* 1964).

The practice of law embraces the art of conveyancing, *e. g., Washington State Bar Ass'n v. Washington Ass'n,* 41 *Wash.* 2d 697, 251 *P.* 2d 619, 628 (*Wash. Sup. Ct.* 1953) (concurring opinion); *Grand Rapids Bar Ass'n v. Denkema,* 290 *Mich.* 56, 287 *N. W.* 377, 381 (*Mich. Sup. Ct.* 1939); *In re Opinion of the Justices,* 289 *Mass.* 607, 194 *N. E.* 313, 317

(*Mass. Sup. Jud. Ct.* 1935); *Childs v. Smeltzer,* 315 *Pa.* 9, 171 *A.* 883, 885 (*Pa. Sup. Ct.* 1934), which has been defined as

"A term including both the science and art of transferring titles to real estate from one man to another." *Black, Law Dictionary* (*4th ed.* 1951).

That aspect of conveyancing encompassing the drafting of legal instruments has, at least in the context of the *Northern New Jersey* case, been proscribed to all but licensed attorneys. To the extent that such services are performed by defendant (a non-lawyer conveyancer), who realistically carries on the same functions as did the Title Company in the above case, they necessarily constitute the unauthorized practice of law.

The defendant seeks to avoid the above conclusion by urging that at English common law the conveyancer's profession was recognized as separate and distinct from the practice of law; that that common law is a part of our state law; that public policy in the United States and the State of New Jersey has been to recognize the independent profession of conveyancing and that for all these reasons a "conveyancer" may engage in what might otherwise be the practice of law. Such an argument is unsound, seeking as it does to make the distinction turn on who performs the service rather than upon the inherent nature of the act itself. *Cf. Stack v. P. G. Garage, Inc.,* 7 *N. J.* 118, 120 (1951). This Court has the sole responsibility for determining what constitutes the practice of law, New Jersey *Constitution of* 1947, *Art.* VI, § II, par. 3; *New Jersey State Bar Ass'n v. Northern N. J. Mtge. Associates, supra,* 32 *N. J.,* at *pp.* 436, 446; *N. J. State Bar Ass'n v. Northern N. J. Mortgage Associates,* 22 *N. J.* 184, 198 (1956), and we have held that admission to our bar is a privilege granted in the interests of the public, for the purpose of protecting the unwary and the ignorant from injury at the hands of persons unskilled or unlearned in the law, as determined by this Court's requirements of prior education and passage of the bar examination. *New Jersey State Bar*

*Ass'n v. Northern N. J. Mtge. Associates, supra.* 32 *N. J.,* at p. 436; *N. J. State Bar Ass'n v. Northern N. J. Mortgage Associates, supra,* 22 *N. J.,* at *p.* 195; *In re Baker,* 8 *N. J.* 321, 338 (1951); *Auerbacher v. Wood,* 142 *N. J. Eq.* 484, 486 (*E. & A.* 1948). In view of that purpose we have no difficulty in concluding that, despite what might have been the status and domain of a "conveyancer" at common law, see 12 *Holdsworth, A History of English Law* 70–72 (1938), such a function is, today, insofar as it involves the preparation of legal instruments for others, within the exclusive realm of the legal profession. The exercise of judgment in the proper drafting of legal instruments, or even the selecting of the proper form of instrument, necessarily affects important legal rights. The reasonable protection of those rights, as well as the property of those served, requires that the persons providing such services be licensed members of the legal profession.

■■ The foregoing is also dispositive of defendant's contention that he has been denied a property right without due process. Since we herein hold that he has been practicing law, a right to engage in which he never had, he has been deprived of nothing. Furthermore, even assuming that one had at one time a right to "practice his profession of conveyancing," such activity can be prospectively regulated in the public interest without being violative of due process. *Cf. Nebbia v. People of State of New York,* 291 *U. S.* 502, 525, 54 *S. Ct.* 505, 511, 78 *L. Ed.* 940, 950 (1934); *Ferguson v. Skrupa,* 372 *U. S.* 726, 83 *S. Ct.* 1028, 10 *L. Ed. 2d* 93 (1963), reversing 210 *F. Supp.* 200 (*D. Kan.* 1961); *American Budget Corp. v. Furman,* 67 *N. J. Super.* 134 (*Ch. Div.* 1961), affirmed o. b. 36 *N. J.* 129 (1961).

Judgment is affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.