[No. 29714.  *En Banc.*  October 5, 1945.]

*In the Matter of the Application of* Russel R. Ridenour
*for a Writ of Certiorari to the Washington State Bar
Association.*[1]

*Oliver R. Ingersoll*, for applicant.

*S. H. Kelleran*, for board of governors.

[1]Reported in 162 P. (2d) 278.

JEFFERS, J.—This proceeding came before this court on the application of Russel R. Ridenour (hereinafter referred to as Mr. Ridenour or applicant) for an order to show cause why a writ of certiorari should not issue, in order that this court might review the action of the board of governors of the Washington state bar association (hereinafter referred to as the board) in refusing to allow Mr. Ridenour's application and recommend to this court that applicant be admitted on motion to practice law in all the courts of this state.

Upon the filing of the application, supplemented by Mr. Ridenour's affidavit, in this court on June 28, 1945, the chief justice caused a show cause order to issue requiring the board to show cause before this court on July 27, 1945, why a writ of certiorari should not be issued commanding the board to certify and return to this court a full, true, and complete transcript of the records, judgments, orders, and proceedings in the action made before it, in order that this court might review such proceedings. On July 23, 1945, the board filed its return to the show cause order and attached thereto all the letters, affidavits, and certificates filed with and considered by the board, and all orders made by the board, together with certain questions propounded to applicant by the board and his answers thereto.

The above letters, affidavits, certificates, and answers of Mr. Ridenour were all considered by the board, either at the time of the original hearing on his application for admission to practice law or on the motion of applicant for a rehearing. Inasmuch as the board denied the application at the time of the original hearing, and subsequently denied the motion of applicant for a rehearing, we shall not distinguish between the hearings in our discussion of the facts.

Mr. Ridenour's application was filed with the board on September 9, 1944. No question is raised as to the procedure adopted by applicant, and we shall assume this matter is now properly before us for the purpose of reviewing the action of the board on the record before it at the time of the original order denying the application and at the

time the board denied Mr. Ridenour's motion for a rehearing. This matter first came before the board, in so far as any hearing is concerned, on January 20, 1945, at which time the applicant appeared in person. Mr. Ridenour was examined by the board in what might be termed an informal interview. The questions propounded to Mr. Ridenour and his answers thereto are set out in the record.

After a consideration of the record, the board denied the application for the following reasons:

"1. That the applicant fails to satisfy the residence requirement as set forth in Rule II—'Applications for admission—Citizenship—Residence—Additional facts' in the Rules for Admission to Practice.

"2. That the applicant fails to meet the requirement of Rule III of the Rules for Admission to Practice—'Nonresident attorneys—Requisites to admission', with respect to practice within a period of three years from the termination of the period during which the applicant was actually engaged in practice in another state prior to his application for admission here.

"3. That the applicant has violated the Canons of Ethics by actually practicing law in Pasco, Washington, pending his admission."

The three grounds above mentioned are the only ones argued before this court, and we therefore assume the applicant has met and complied with the other provisions of the rules relative to admission to practice in this state by a non-resident attorney.

We shall discuss the above grounds in the order in which they are set out.

Rule II, Rules for Admission to Practice, 193 Wash. 69-a, as approved by this court, became effective August 1, 1938, and so far as material provides:

"Every person desiring to be admitted to the bar shall execute under oath and file with the executive secretary of the state bar his application in duplicate, in such form as may be required by the board of governors, but no application shall be granted *unless the applicant is, at the time of the filing thereof,* a citizen of the United States *and shall have been a bona fide resident of the state of Washington*

*for not less than ninety days immediately preceding the date of said filing."* (Italics ours.)

The conclusion of the board that applicant had not established that he was a *bona fide* resident of Pasco, Washington, for the required time prior to the filing of his application, seems to have been based largely upon its conclusion that Mr. Ridenour was evasive in answering certain questions relative to his change of domicile from Indiana to Washington and as to his residence in Pasco. We shall later set out the particular questions and answers referred to.

Mr. Ridenour was born in Ohio, in 1890, and moved to Indiana in about 1914. He was admitted to practice law in Indiana, in 1915, and so far as the record shows was a member of the bar of Indiana in good standing at all times up to the filing of his application with the board. He served about fifteen months in the first World War, apparently becoming a reserve officer after his discharge from active duty. After the war he engaged in the general practice of law in Indiana until 1940, when he went to work for the Civilian Conservation Corps. He was located in the practice in Auburn, Indiana, from 1919 to 1940.

In 1941 he went into the office of Hartzel & Todd, at Fort Wayne, Indiana, where he remained and engaged in the general practice until February 1, 1942, at which time he was called into the service and assigned to the air corps with the commission of major.

Mr. Ridenour was prosecuting attorney of DeKalb county, Indiana, during 1921 and 1922. He was a member of the Indiana General Assembly for the sessions of 1925 and 1927.

Mr. Ridenour had been stationed at Spokane for some time prior to May 23, 1944. On the date last mentioned, applicant was granted a temporary leave of absence, and, on July 25, 1944, he received an honorable discharge from the army, which recites that he served from February 5, 1942, to July 25, 1944.

Applicant had heard from a law book salesman that there was a good opening for a lawyer at Pasco, and, accordingly,

about June 1, 1944, he went to Pasco where he contacted D. W. Zent. We shall refer to Mr. Ridenour's activities at Pasco later.

We shall now set out the particular questions asked applicant by the board and his answers thereto, referred to by the board in its brief:

"Q. When did you leave the service? A. I was relieved about May 24, 1944. I am still in the Reserves. Q. Why were you relieved? A. I never could find out. I was a major. Q. State what you have been doing since 1944. A. I have been with Mr. Zent. Q. Have you practiced law for the past three years? A. I was in practice up until 1942. Q. Where is your family Mr. Ridenour? A. My wife is in Indiana. Q. Do you own any property there? A. I own a home there. Q. How did you happen to come out here? A. I asked a law book salesman where the best location was. He said Pasco. Q. Do you expect to bring your wife out here? A. I suppose so."

Apparently based upon the above answers and the further fact that Mr. Ridenour's application indicated he was a resident of Indiana up until May 25, 1944, regardless of the fact that in his application Mr. Ridenour was claiming actual residence at Pasco, Washington, the board concluded he had not met the requirements of Rule II, *supra.*

It also appears that in the interview above referred to, Mr. Ridenour was asked:

"Q. Did you vote at the last election? A. I did. Q. Where did you vote? A. At Pasco. Q. What kind of a showing did you make when you registered to vote as to your residence? A. I told them where my residence was. Q. When did you come to Pasco? A. June 1. I came in June, 1943 (1944). . . . Q. Why did you leave Indiana after all these years? A. After I checked the whole thing over, the money and competition was not so strong in Pasco. I was out of the practice for two and a half years and I would have to start new anyway."

While the board did not at the first hearing have before it the affidavit of D. W. Zent, to which we shall refer, it did have this affidavit before it at the time it considered and denied applicant's motion for a rehearing. We quote from

the Zent affidavit, in so far as it has a bearing on the question now being discussed:

"Affiant further says that during the early part of the month of June, 1944, Russel R. Ridenour, recently relieved from active duty from the Army, came into my office and talked to me about the practice of law in the city of Pasco, Franklin county, state of Washington, and the matter of forming a partnership to practice law in the city of Pasco when he was admitted to practice law in the state of Washington; that I was interested in the proposition and told him to hang around a couple of days and I would think it over; that within a couple of days we had another conversation about the matter and we agreed to form a partnership for the practice of law as soon as he was admitted to practice law in the state of Washington and in the meantime he could act as my law clerk as I didn't have and couldn't find a competent stenographer, and secure a license to sell real estate and sell real estate. Affiant further says that Russel R. Ridenour secured a license to sell real estate and sold some real estate and assisted me in the law office."

We are of the opinion that, when the entire record now before us is considered, it sufficiently appears that Mr. Ridenour was a *bona fide* resident of Pasco, Washington, for a period of ninety days immediately preceding the filing of his application to practice law, and that the board erred in concluding otherwise.

We shall next discuss the second reason advanced by the board for refusing to recommend the admission of Mr. Ridenour on motion. The board concluded that applicant had not sufficiently complied with the following part of Rule III, Rules for Admission to Practice, 193 Wash. 70-a:

"Nonresident Attorneys—Requisites to Admission.

"The application of such applicant shall not be approved by the board of governors unless it shall be presented within a period of three years from the termination of the period during which the applicant was actually engaged in practice."

The rule also provides:

"Every applicant who applies for admission based upon his prior admission to the bar of another state or territory and practice therein, shall file with the executive secretary

of the state bar with his application a certificate from the clerk or other officer of the highest court of record of such state in which he has previously been admitted, or from the clerk of the court of such state by which attorneys are admitted, under the seal of the court, showing that the applicant was entitled to practice, and was actively engaged in practice in such state or was holding a judicial position therein or was engaged in the teaching of law in an approved law school, for a total period of at least five years, and showing the period of time during which said applicant was entitled to and was actually engaged in practice."

There is in this record a certificate by the clerk of Steuben circuit court that Mr. Ridenour was admitted to practice before that court on December 16, 1915. There is also a certificate by Thomas C. Williams, clerk of the supreme court of Indiana, which is the highest court of record of that state, that Mr. Ridenour

". . . was admitted to practice law in the courts of record of said state on the 4th day of February, 1925; that he has been at all times since entitled to practice law in this state, and that he has been actively engaged in the practice of law in this state from the 4th day of February, 1925, to the 5th day of February, 1942."

We also find a certificate by the chief justice of the supreme court of Indiana to the effect that applicant is duly licensed to practice law and is in good standing at the bar of that court, and that he is an honorable and worthy member of his profession. Both the certificates last above referred to are dated August 26, 1944.

We also find a certificate by the president and secretary of the bar association of DeKalb county, Indiana, to the effect that Mr. Ridenour is a duly licensed attorney of the bar of that state, and entitled to practice law in the courts of record of such state; that he has been engaged in the practice of law in that county from September 15, 1920, to February 5, 1942; that he is an honorable and worthy member of the profession; and that no charges of unprofessional conduct have been made against him.

We are of the opinion it appears quite conclusively from this record that Mr. Ridenour was actively engaged in the

practice of law in Indiana from the time of his admission to practice before the circuit court in 1915 until February 3, 1942, with the exception of the time served in the first World War, and from September 15, 1940, to April 16, 1941, when he was employed by the Civilian Conservation Corps. We are of the opinion that Rule III does not require that a non-resident attorney who applies for admission to practice in this state on motion must show that he has continuously practiced law for five years next preceding the three-year period mentioned in the rule, but that if such an applicant has actually practiced law in a sister state for a total period of at least five years and is otherwise qualified, and files his application to be admitted to practice in this state within three years from the termination of the period during which he was actually engaged in practice, he has met the requirements of the rule under discussion.

We now come to the third reason given by the board for refusing to recommend that Mr. Ridenour be admitted on motion to practice in the courts of this state.

Applicant's activities in Pasco were first called to the attention of the board by a letter dated October 20, 1944, written by an attorney at Pasco, and a letter dated October 11, 1944, written by an attorney at Kennewick.

On October 16, 1944, a letter was written by the executive secretary of the board to Mr. Ridenour, from which we quote:

"It has been called to our attention that while your application for admission to the bar in this state is pending you are appearing in court and presenting matters in Franklin county."

Rule XXV, Rules for Admission to Practice, as found in 193 Wash. 83-a, is then set out in full. The letter concludes:

"The purpose of this rule is not to permit a foreign attorney whose application is pending, to regularly practice law before his admission, but is for the benefit of an attorney from a foreign state, who is not seeking admission here but who has a matter before the courts in this state. Foreign attorneys pending action on their application for admission are only allowed the same rights as allowed a law clerk."

On October 24, 1944, the following letter was written by Mr. Ridenour to the board:

"This is to acknowledge receipt of your letter concerning my appearance in court as an attorney while my application is pending.

"This is to advise that an arrangement for a partnership has been made with Mr. Zent, upon my admission to practice and that pending the same I have been waiting for admission I have acted as his law clerk.

"I have never signed any pleadings as attorney and all pleadings filed from Mr. Zent's office have his individual signature.

"For the convenience of Mr. Zent I have tried a few default divorce cases, and appeared in an ex parte matter for him.

"However, inasmuch as objection has been raised to my appearance for Mr. Zent and in assisting him in court I will refrain from so doing until such time as I have been admitted to regularly practice law in the courts of the state of Washington."

On October 20, 1944, the following letter was written by Mr. Zent to the board:

"I received the copy of a letter which you wrote to Mr. Russell R. Ridenour concerning his appearing in court as an attorney, etc. and in reply I wish to say: While Mr. Ridenour and myself have formed a partnership and he has been in the office with me for sometime it has been distinctly understood that until such time as he was admitted to practice in the state of Washington, he was simply a law clerk in my office and all matters have been signed by myself alone as attorney. The matter was explained to the judge and under the circumstances he has allowed Mr. Ridenour to handle some default divorce cases and other ex parte matters for me in court. However, inasmuch as objections have been raised as to this I shall not ask the court to allow him to appear for me in court until such time as he has been duly admitted."

On December 5, 1944, a letter was written by the board to B. E. McGregor, of Prosser, who was then, as appears from the letter, "chairman of the Local Administrative Committee," requesting him to investigate the charges against Mr. Ridenour and report back to the board.

On December 30, 1944, the following letter was written by Mr. McGregor to the board:

"We received your letter of Dec. 5th by your executive secretary relative to the matter of complaints filed against Russel R. Ridenour for alleged practices in court without license.

"I passed to Mr. B. B. Horrigan of Pasco a member of our committee the matter of investigation of the complaints in the courts down there and he has reported by letter which I enclose herewith.

"Mr. Charles L. Powell of Kennewick another member of the committee has reported direct to you he advises me.

"In this county I find that Mr. Ridenour has been in the court room a few times sitting in with other counsel as I supposed to familiarize himself with actual procedure rather than with any intention to violate the rules against practicing without permission. Attorneys here do not feel that admission should be denied him on that account if he is otherwise qualified."

B. B. Horrigan, of Pasco, wrote the following letter to Mr. McGregor, under date December 27, 1944:

"I acknowledge receipt of your letter of December 21, 1944, in reference to a report to the bar association concerning the law activities of Russell R. Ridenour, whose admittance to the bar comes before the board early in January.

"I know it is true that there were some infringements of the law in regard to his appearance in court on law matters, but I think that his transgressions in that respect are not such that should debar him from admittance to practice. There are many extenuating circumstances; in the first place, he was associated with D. W. Zent, who is a member of the bar, and any appearances of Mr. Ridenour's in court were on matters in which Mr. Zent was directly interested. Furthermore, there was quite a press of business here, especially small matters involving a lot of details, evictions, O.P.A. rules and regulations, complaints, and what-not, and we do not believe the attorneys here in Pasco objected to what little activities he displayed in legal matters.

"I have become quite well acquainted with him since he has been here; he came here on the termination of his military service. He is a man of middle age, and I cannot find anything in his conduct here that would justify any drastic action of denying him admission to the bar, and I trust that

what he has done will not have that effect. I also believe he felt that he had the right to appear in such matters in view of the fact that he was associated with Mr. Zent; this, of course, was an error of judgment on his part."

The following are the contents of a letter written by Ivan Merrick, now one of the superior court judges for Franklin, Benton, and Adams counties, to the president of the Washington state bar association, on January 13, 1945:

"Major Russel R. Ridenour, of Pasco, has an application pending for admission to the bar, which I understand will be considered next Saturday, by the board of governors.

"I wish to recommend Major Ridenour very highly. He has lived in Pasco several months since his retirement from the army. He has taken his place in the civic life of the community and has been most ready and willing to assist in all civic work, including, U.S.O., Red Cross, Bond Drives, Chamber of Commerce, etc.

"I understand some complaint was made that he practiced law since filing his application for admission but I feel sure from a rather intimate acquaintance with him that this is not true. Prior to filing his application he did appear in court in two or three instances in emergency matters, where some attorney was ill, but this was at the request of both court and counsel. As he was a member in good standing of the Indiana State Bar at the time, I cannot see where this was at all improper.

"We are greatly in need of another lawyer to take some of the load of criminal cases, and it would be a great favor to us if he could be admitted promptly. There are some cases to be tried at Pasco, commencing January 22nd, and Major Ridenour could be very useful if it could be possible to admit him at once so he could get to work."

The following is a letter written on March 21, 1945, by Honorable Matt L. Driscoll, one of the superior court judges for Adams, Benton, and Franklin counties, to Mr. Ridenour:

"You asked me for a statement in reference to the time I permitted you to associate with Mr. Zent in the trial of some cases before me.

"As I recall the episode, Mr. Zent stated to me that you were admitted to practice in the state of Indiana and anticipated moving for admission in this state, and asked me if I had any objection to you aiding in the trial of the cases in

which he was involved. I stated at that time that I had no objection and asked the opposing attorneys if there was any objection, and they answered that they had no objection to your aiding in the trial of the causes before me at that time, so I granted you permission to proceed.

"This is all I can recall that happened at that time. I assumed it was strictly proper, and there being no objection from the other attorneys, of course I allowed you to engage in the practice as an associate with Mr. Zent."

We have heretofore quoted from an affidavit made by D. W. Zent, and we now quote further from that affidavit:

"That I was appointed by Judge Driscoll to defend a prisoner in the superior court of Franklin county during the month of June, 1944, and was talking to Judge Driscoll about a trial date and not caring to try the case, Judge Driscoll replied: 'Why don't you have the Major (meaning Major Russel R. Ridenour) try the case. It is all right with me and will be all right with the prosecuting attorney.' I said that I would talk to the Major and have him try the case. When the case came on for trial I had the Major try the case and represent the defendant for me.

"Affiant further says that thereafter with permission of the court he tried one ex parte matter and three (3) default divorce cases for me between that time and the middle of September and after that he never tried any more cases for me. That all pleadings filed by me were signed by me and Major Ridenour never signed any pleadings as an attorney-at-law. That at the time I had Major Ridenour try the cases for me I was under the impression that under the arrangement he would have a right to try my cases for me and that neither he nor I would be violating any court rule or any statute of the state of Washington, as he was regularly admitted to practice law in the state of Indiana and was in good standing at the bar of Indiana at the time he was ordered to active duty with the army and that I so in substance informed Mr. Ridenour that under section 139-4 Remington Revised Statutes that I believed that the court had a right to permit his appearance.

"Affiant further says that since the time of receiving a letter from the executive secretary of the Washington State Bar Association stating it was a violation of the rules Mr. Ridenour has never tried any cases or acted other than as a law clerk for me and is not now preparing any cases for me nor assisting me in any manner in the practice of law.

"Affiant further says that however Mr. Ridenour offices with me for the purpose of selling real estate on his own account and is paying for the use of the office."

We also quote from a letter written December 11, 1944, by one of the lawyers who called the attention of the board to Mr. Ridenour's activities:

"Since my previous letter, the above applicant (Mr. Ridenour) has not practiced law. The only purpose of my letter was to request that he not practice pending admission. I believe that any activities on his part were due to a misunderstanding, as he was officing with a Mr. D. W. Zent of Pasco, and felt that under the rules he was entitled to practice if he did so in Mr. Zent's name. To my knowledge, he has not done anything that would indicate any lack of qualifications. Please consider my objection as withdrawn."

Rule XXV, Rules for Admission to Practice, *supra,* provides:

"No person shall appear as attorney or counsel in any of the courts of this state, unless he is an active member of the state bar: *Provided,* That a member in good standing of the bar of any other state may, with permission of the court, appear as counsel in the trial of an action or proceeding in association only with an active member of the state bar, who shall be the attorney of record therein and responsible for the conduct thereof.

"Application to appear as such counsel shall be made to the court before whom the action or proceeding in which it is desired to appear as counsel is pending. The application shall be heard by the court after such notice to the adverse party as the court shall direct; and an order granting or rejecting the application made, and if rejected, the court shall state the reasons therefor.

"No member of the state bar shall lend his name for the purpose of, or in any way assist in, avoiding the effect of this rule."

It may be admitted that perhaps there was a technical violation of the above rule as interpreted by the board; however, we are firmly of the opinion that the record shows there never was an intent on the part of Mr. Ridenour at any time to violate any of the rules but that the above-named judge of the superior court, Mr. Ridenour, and the other attorneys in the above-named counties believed that be-

cause Mr. Rideour was a member in good standing of the bar of Indiana, he was violating none of the rules of this state in appearing in court as he did and in his other activities.

We are of the opinion that Mr. Ridenour has done nothing, in so far as his activities in the above-named counties are concerned, which would justify us, or which justified the board, in concluding that applicant should be denied the right of admission to practice, on motion, before all the courts of this state.

We therefore conclude, after a consideration of the entire record, that the board erred in refusing to recommend the admission of Mr. Ridenour to practice law before the courts of this state, and it is our further conclusion that the applicant is entitled to be so admitted upon his motion made to this court.

BEALS, C. J., MILLARD, STEINERT, BLAKE, ROBINSON, MALLERY, and GRADY, JJ., concur.

SIMPSON, J., dissents.