**In the Matter of the Petition of Katherine E. SASSEVILLE for Review of a Determination of the State Bar Board.**

**Civ. No. 10322.**

Supreme Court of North Dakota.

July 14, 1983.

---

[redacted]

---

Katherine E. Sasseville, pro se, Fargo, and Jay D. Myster (argued), Fergus Falls, Minn., for petitioner.

Thomas A. Mayer, of Fleck, Mather, Strutz & Mayer, Bismarck, for State Bar Board.

VANDE WALLE, Justice.

Katherine E. Sasseville has petitioned this court to review the negative recommendation of the North Dakota State Bar Board on her application for admission to practice law in the State of North Dakota without examination. We affirm the recommendation of the Bar Board.

Sasseville applied for admission to practice in this State without taking an examination as permitted by Rule 1(c), Admission to Practice. In her application she stated she had been a practicing attorney in the State of Minnesota for the five years preceding her application for admission. After reviewing her application and the supporting documents, the Bar Board notified her of its determination that she does "not qualify for admission under the provisions of the rule." Sasseville requested and was granted an informal interview with the Bar Board to discuss her qualifications for admission and the reasons for denial. The Bar Board and Sasseville agreed that the only question in contention was whether or not her work as a Commissioner on the Minnesota Public Utilities Commission constituted the practice of law. After the informal interview the Bar Board again denied Sasseville's application for admission. The Bar Board concluded that because Sasseville's "work as a member of the Minnesota Public Utilities Commission does not constitute the practice of law under Rule 1(c)(5), it could not recommend admission on Motion." Sasseville waived her right to a formal hearing and petitioned this court for review of the denial on briefing and oral argument. We granted her petition on condition that a stipulation of facts between the parties be entered before the court. Sasseville's application is now before us for consideration. Because there was no formal hearing as contemplated by Rule 1(d)(2), Admission to Practice, we are limited to the stipulation of facts which the Bar Board and Sasseville have agreed to. However, the parties have agreed that the only issue between them is whether or not Rule 1(c)(5), Admission to Practice, may be or should be interpreted so as to include Sasseville within the meaning of its terms, in view of the stipulated facts of her professional experience and qualifications. Rule 1(d)(3) provides that the burden of proof by a preponderance of the evidence is on the applicant.

Rule 1(c) provides, in part, that at the discretion of this Court, any person may be admitted to the Bar of this State without examination, upon satisfactory proof that the applicant:

> "(4) has been admitted to the bar of some other state, or states, or the District of Columbia, for not less than five years.
>
> "(5) shall have practiced in such state, or states, or in the District of Columbia, in which he was admitted, for at least 4 of the last 5 years immediately preceding his motion for admission to practice law in this state. The term 'shall have practiced law' shall include: service as a judge of a court of record; the teaching

of law as a full-time instructor in a duly accredited law school or schools; and the full-time performance of legal work in the trust department of a state or national bank or as government counsel or as house counsel, regardless of where such service is performed. It shall also include the active service as a full-time commissioned officer in a legal branch of the United States military service, performing work of a legal nature as a primary assignment substantially equivalent to that performed in civilian practice of law, or any combination of legal practice and performance of the services mentioned." [1]

Sasseville served as a Minnesota Public Utilities Commissioner from 1975 until 1981, the time of her application for admission to practice in this State without examination. The stipulated facts agreed upon by Sasseville and the Bar Board contain the following description of Sasseville's service as a Public Utilities Commissioner:

"VII.

"The Applicant has stated that her practice, duties and responsibilities as a member of the Minnesota Public Utilities Commission are as follows:

'Because the North Dakota Supreme Court Rules do not expressly mention administrative adjudicatory positions such as administrative law judges or public utilities commissioners in the reference to

"practicing attorneys", I wish to delineate for your consideration the characteristics of my former position which, I believe, constitute the practice of law.

'Minnesota Statutes, Chapter 216A, contemplates that the Minnesota Public Utilities Commission shall be comprised of persons who have expertise in those professional fields comprising regulation of public utilities, viz., law, engineering, valuation, accounting; "The Governor in his selection of commissioners shall give consideration to persons learned in law ..." M.S. 216A.03.

'My appointment fulfilled that statutory direction. I was the only attorney among the Commission's five members when I was appointed and most of the time thereafter. Then Governor Wendell Anderson, himself an attorney, was specifically seeking a lawyer when he appointed me.

'Minnesota law specifically describes the functions of the Commission as both quasi-legislative and quasi-judicial M.S. 216A.15, and includes "the promulgation of all orders and directives of particular applicability governing the conduct of the regulated businesses, together with procedures inherently judicial". M.S. 216A.02 (Sub. 4).

'This section distinguishes the "inherently judicial" functions from those "acts or procedures which are historically or

---

1. We have quoted the provisions of Rule 1(c)(4) and (5) as it was in effect at the time of Sasseville's application for admission to practice and the Bar Board's negative recommendation. Since that time Rule 1 has been amended, effective July 1, 1983. The Rule has been divided into 5 rules and the provisions of Rule 1(c)(4) and (5) are now found at Rule 4(A) and read as follows:

"*Admission by Motion or Attorney's Exam*
"(A) Any person who is a member of the bar of another state or the District of Columbia may apply for admission by motion if that person:
　"1) meets the requirements of Rule 1;
　"2) has been a member of the bar of another state or the District of Columbia for at least five (5) years;
　"3) has for at least four (4) years of the last five (5) years immediately preceding the application for admission on motion been ac-

tively engaged, to an extent deemed by the State Bar Board to demonstrate competency in the practice of law, in one or more of the following:
　"a) the private practice of law;
　"b) service as a judge of a court of record;
　"c) the teaching of law as a full-time instructor in a law school or schools accredited by the American Bar Association; or
　"d) the performance of full-time legal work in a legal capacity."
We do not believe the rule, as amended, would entitle Sasseville to admission to practice without an examination. We note, however, that subsection (D) of Rule 4 provides that if the Bar Board determines the applicant's legal experience does not demonstrate sufficient competency in the practice of law, it shall require the applicant to take an attorney's examination. That provision was not contained in former Rule 1.

functionally legislative in character and those which are inherently administrative or executive in character."

'The latter functions have been removed from the jurisdiction of the Commission and placed under the jurisdiction of an independent and separate state agency, the Department of Public Service.

'Minnesota law in recent years has moved more rigorously than that of any other state to separation of functions in administrative agencies for the purpose of securing the due process rights of regulated entities and the public.

'Unlike the North Dakota Public Service Commission, an elected and political body, the appointed members of the Minnesota Public Utilities Commission (the name changed in 1980) are separated from the administrative and enforcement activities of the Department staff. Staff members who serve an adversarial function for the Department in contested cases are not the employees for the Commission or "beholding" to the Commissioners in any sense. Ex parte contacts with such staff are forbidden.

'Virtually all matters before the Commission are "contested cases" under the Minnesota Administrative Procedures Act, and subject to formal hearings with adjudication based on the record: Findings of Fact must be supported by substantial evidence on the record.

'My responsibilities included presiding over hearings and oral arguments which are conducted on the record. The Commission's final determinations in contested cases are reviewable by the District Court, on the record, and are not heard de novo. Under the Minnesota Administrative Procedures Act, contested cases are subject to stringent requirements of notice and hearing. MS Chapter 15.

'The Commission rules on procedural and evidentiary motions certified to it by the Hearing Examiner. Conducting hearings or participating in hearings, questioning witnesses and researching areas for questioning were part of my re-sponsibilities which were analogous to the role of a trial judge.

'However, the greater part of the work of the Commission in Minnesota is more analogous to the work of an appellate judge. Because of the proliferation of the case-load, including a dozen or more multi-million dollar rate increase petitions annually, the Minnesota Administrative Procedure Act provides for hearing, in the first instance, by a hearing examiner who writes a recommended decision for the Commission. Since creation of the Office of Administrative Hearings, the Commissioners spend less time in the actual conduct of the hearings and most of their time listening to oral argument or exceptions (and replies) taken to the recommended decision of the examiner, and in deliberation and review of the report. The Commission analyzes the record, including testimony and exhibits, briefs, the examiner's report and exceptions and replies thereto. The Commission then drafts its final order, which is subject to motions for reconsideration and which may be appealed, on the record, to the District Courts.

'I drafted important sections of most orders and complete orders or dissents or concurring opinions in various cases. The nature of this work was judicial in essence. In a contested case in which the rights of various parties would be determined on the record, I was responsible for the adjudication of those rights and interests for determining the facts and applying the law, as well as for setting forth the public policy determinations of the state. In all these matters, I served in a judicial function much as one might serve in a tribunal of a special jurisdiction: as a magistrate, or as a judge in a court of claims or a special tax court or other tribunal whose subject matter jurisdiction is arcane or specialized enough to require that the trier of fact have expertise in that area of law.'"

Although Rule 1(c)(5) specifies certain activities which are to be considered as within the term "shall have practiced law," our rule does not contain a general definition of

the practice of law. We agree with Sasseville that the included activities are not necessarily exclusive of any other activities which might be considered as the practice of law. We therefore must examine each case on its facts to determine compliance with that condition of Rule 1. See *In re Huntley*, 424 A.2d 8 (Del.1980).

Sasseville notes that Section 216A.03 of Minn.Stat.Ann. specifies that in his selection of Commissioners for the Public Utilities Commission the Governor shall give consideration to persons learned in the law. She argues that she is licensed to practice law in Minnesota and her appointment in 1975 to the Minnesota Public Utilities Commission was because of that fact; and that her work as a Commissioner constituted the practice of law.

Section 216A.03, Minn.Stat.Ann., specifies that "The governor in his selection of commissioners shall give consideration to persons learned in the law or persons who have engaged in the profession of engineering, public accounting or property and utility valuation as well as being representative of the general public."

Although Sasseville's appointment complied with the statute, we agree with her that it is the nature of the work she performed while a Commissioner that is most significant. The parties have cited no cases which involve the issue of whether or not a commissioner of a public agency such as the Minnesota Public Utilities Commission can be considered to be engaged in the practice of law. An extensive annotation on the matter is contained in 14 A.L.R. 4th beginning at page 7.[2] Conceding that Sasseville was chosen for the Commission because she was learned in the law, we nevertheless cannot conclude that her service on the Commission constituted the practice of law. Section 216A.03, Minn.Stat.Ann., specifies other professions which the Governor of Minnesota is to consider in his selection of persons for the Commission including engineering, public accounting, and property or utility valuation. Presumably they all bring certain areas of expertise to the Commission. Nothing in the stipulated facts before us leads us to conclude that only lawyer members of the Commission could or would participate in the drafting of orders, the questioning of witnesses, or participating in hearings. Although such activities may involve quasi-judicial matters they are the type of activities which we would expect both lawyer and nonlawyer members of the Commission to engage in. On the other hand, we expect that the lawyer members of the Commission, including Sasseville, would, at times, engage in accounting, engineering, or property-valuation activities. We might assume that the nonlawyer members of the Commission would defer to the lawyer members of the Commission in legal matters and that the lawyer members would defer to members versed in engineering, accounting, and property and utility valuation in their respective fields. This fact, if it is a fact, does not alter our conclusion.

Sasseville, as a lawyer member of the Commission, was not responsible for providing legal advice and services to the Commission. The Minnesota Attorney General is required to act as the attorney for all State officers, boards, and commissions in matters pertaining to their official duties. See Minn.Stat.Ann. Sec. 8.06. The Attorney General is to provide the Commissioners with advice, counsel, and assistance necessary for the proper performance of their duties. Minn.Stat.Ann. 216.10. See also Minn.Stat.Ann. Sec. 216B.54 and Sec. 216B.64.

Sasseville refers us to this court's decision in *Cain v. Merchants National Bank & Trust Co. of Fargo*, 66 N.D. 746, 268 N.W. 719 (1936), for the proposition that the practice of law is not limited to preparation of cases and their conduct in court but it in-

---

2. The title of the annotation is "Validity, Construction, and Effect of Reciprocity Provisions for Admission to Bar of Attorney Admitted to Practice in Another Jurisdiction." Our rule is not predicated on a reciprocity theory; however, many of the cases discussed in the annotation concern a definition of the practice of law or similar provisions and are not concerned with the reciprocity aspect of the rules or statutes involved.

cludes legal advice and counsel and the drawing of instruments, when such instruments set forth, limit, terminate, claim, or grant legal rights. *Cain* involved an allegation of the unauthorized practice of law; however, we agree with Sasseville that our rule does not necessarily require that an applicant prepare cases and present them in court in order that the applicant be engaged in the practice of law. *Cain* also held that one who is not a member of the Bar may lawfully prepare instruments such as simple deeds, mortgages, promissory notes, and bills of sale when these instruments are incident to transactions in which such person is interested, provided no charge is made therefor. See also *Application of Christianson*, 215 N.W.2d 920 (N.D.1974). Sasseville's activities, if they are governed by *Cain*, appear to be more in the nature of the exception to the definition of the practice of law contained therein than to the included activities defined therein. In any event, our decision is not based primarily on the fact Sasseville did not prepare cases and present them in court during her term as Commissioner. However, we believe that is one of the factors which we may consider.

Although we recognize that whether or not Sasseville may be considered to have practiced law while serving as a Commissioner is a close question, the stipulated facts before us are rather general in nature and, as we have already noted, include functions which might well be performed by nonlawyer members of the Commission as well as lawyers. The only record before us is, of course, the stipulation of facts and, recognizing that Sasseville as the applicant has the burden of proof by a preponderance of the evidence as specified in Rule 1(d)(3), we conclude she has not met her burden.

The application for admission to practice without examination is denied.

ERICKSTAD, C.J., and SAND and PAULSON, JJ., concur.

PEDERSON, Justice, dissenting.

I have heard it said that one of the justices of the United States Supreme Court once wrote a dissent that stated: "For the reasons relied upon by the majority, I dissent." That nearly fits my reaction to the opinion authored by Justice VandeWalle. Because Sasseville did practice law and is qualified to do so, her application for admission should be granted.

Although Sasseville should be entitled to rely on the rule as it existed when her application was filed, if Rule 4(A)(3)(a) and (d), (quoted in footnote 1 of the majority opinion) is more favorable to her, it ought to be applied. Both the old rule and the new rule are either ambiguous or absurd or both, and need to be construed.

"Private practice of law" can mean many things. If Sasseville were accused of unauthorized practice of law because she spent full time drafting orders and writing opinions signed by other commissioners, she would obviously be acquitted. If a person is licensed to practice law, and spends only part time drafting orders and writing opinions that are signed by others, that person is practicing law. If the word "private" means not employed by a public agency, it is discriminatory and void. If the State is your client, you are no less engaged in the practice of law than if you hold yourself out to the general public as a "practicing lawyer" (where you do not have to show that you have any private clients or that you are so engaged full time). A title given to a lawyer in public service should not be of any significance.