491 A.2d 576

**In the Matter of the Application of MARK W. For Admission to the Bar of Maryland.**

**Misc. No. 15, Sept. Term, 1984.**

Court of Appeals of Maryland.

April 26, 1985.

C. Christopher Brown, Baltimore (Brown & Goldstein, Baltimore, on brief), for applicant.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE and RODOWSKY, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

SMITH, Judge.

We shall here hold that employment as a hearing examiner for the Maryland Department of Employment and Training does not constitute practice of law so as to permit an individual to become a member of the Maryland Bar without taking the usual bar examination.

Maryland Code (1957, 1981 Repl.Vol.) Art. 10, § 7 provides in pertinent part:

"[A] member of the bar of any state, district or territory of the United States, who, for five of the preceding seven years, has been engaged as a practitioner, judge or teacher of law, shall be admitted to the bar of this State after having satisfactorily passed an examination given by the State Board of Law Examiners.... The Court of Appeals may make rules for the content and administration of the examination ... and any other rules necessary to provide for the admission to the bar of persons making application for admission on the basis of this subsection."

Rule 14 a (iii) of the Rules Governing Admission to Bar states in pertinent part that an applicant shall indicate "that for at least five of the seven years immediately preceding the filing of his petition he has been regularly engaged ... as a practitioner of law ...." The term "practitioner of the law" is defined by Rule 14 d

"as a member of the Bar of another State, District or Territory of the United States ... who throughout the period specified in the petition has regularly engaged in the practice of law within the United States and its territories ... as the principal means of earning his livelihood and whose entire professional experience and responsibilities have been *sufficient to satisfy the Board* that the petitioner should be admitted under this Rule." (Emphasis added.)

Subsection d further states that the Board

"may consider, among other things,

"(i) the extent of the petitioner's experience in general practice;

"(ii) if the petitioner is or has been a specialist, the extent of his experience and reputation for competence in such speciality;

"(iii) if the petitioner is or has been an employee of a law firm, government or a corporation or other employer, the nature and extent of his professional duties and responsibilities as such employee, the extent of his contacts with and responsibility to clients or other beneficiaries of his professional skills, the extent of his professional contacts with practicing lawyers and judges and his professional reputation among them and

"(iv) any professional articles or treatises of which the petitioner has been the author."

**4**

Rule 14 g places "[t]he burden ... on the petitioner to establish his qualifications for admission under ... Rule [14]." [1]

The applicant testified before the State Board of Law Examiners:

"Well, for the record, I took the [regular bar] exam eight times. I took the exam twice in '73, twice in '74, once in '75, once in '76 and twice in '77. Out of the eight grades, they were in the 190's. One of them I remember being a 197, one being a 199 and a half on the essay portion. I passed all eight multi-state. It was at times I was just so close that it just didn't make sense to stop.

"The other grades I remember, three were in the 180's, I think one in the 170's and one in the 160's."

He sat for and passed the Pennsylvania bar examination in the summer of 1974 and was admitted to practice in Pennsylvania on January 3, 1975. He has carried on a very limited practice in Pennsylvania since that date. He does not seek admission in Maryland on the basis of that practice but upon the basis of his employment as an examiner.

The applicant has been a hearing examiner with what is now the Maryland Department of Employment and Training since October 1975. Originally he was a Hearings Officer II and Hearing Examiner II for the Appeals Division of the Employment Security Administration. As the Board put it:

"The evidence further reflected that the Applicant's job classification in 1975 required him to be an attorney licensed to practice law. Subsequent to July, 1980, the requirement that a hearings examiner be licensed to practice law was deleted and replaced by the current

---

1. Rule 14 i provides that every petitioner under Rule 14 "shall take and pass an out-of-state attorney examination." Power is granted to the Board to define by rule the subject matter of the examination. Board Rule 3 a provides that this examination
 "will relate to the Maryland Rules of Procedure and Maryland District Rules governing practice and procedure in civil and criminal cases, including the Appendix of Forms. The examination will also relate to the Code of Professional Responsibility, as adopted by Maryland Rule 1230."

requirement that the hearings officer be a graduate of an accredited law school."

The applicant described his present duties in what he submitted to the Board:

"Since February 1, 1982 I have served as a Hearing Examiner III and the supervisor of all the Hearing Examiners in the Appeals Division. In that capacity I supervise approximately 15 Hearing Examiners who decide the first level of administrative appeals under Article 95A of the Maryland Unemployment Insurance Law. All these examiners, except for one, are lawyers. Approximately 350 decisions are issued each week by the Hearing Examiners in these cases involving appeals from both the claimants for benefits and their employers. The Hearing Examiner decisions can be appealed to the Board of Appeals of the Employment Security Administration and then to the Circuit Courts throughout the State. I assign the cases to the Hearing Examiners, review their decisions, provide guidance on issues that arise and assist in the development and conduct of training programs. In my review of decisions I must be sure that they comply with recent Maryland court and Board of Appeals decisions. Frequently I respond to questions from attorneys and the Examiners concerning requests for subpoenas and other issues as to the conduct of these quasi-judicial proceedings. I receive assistance in this activity from the Attorney General's Office which represents the Board of Appeals and the Employment Security Administration in court. In this capacity I report directly to the Chairman of the Board of Appeals and the Appeals Counsel for the Board."

The applicant described his prior duties to the Board:

"From October 23, 1975 to January 31, 1982 I served as a Hearings Officer II and Hearing Examiner II for the Appeals Division of the Employment Security Administration. During that period I decided between 28 and 32 cases per week involving complicated issues of law and fact under Article 95A, Maryland Unemployment Insur-

ance Law. The hearings in these cases were formal 'due-process' quasi-judicial proceedings governed by § 7(e) and (g) of Article 95A and the regulations in COMAR 07.04.06. As the presiding officer it was my function to swear in all parties, to summarize the case and to proceed with conducting the hearing to afford all parties the opportunities to be heard on all relevant issues. At many hearings both claimants and employers were represented by counsel or by private organizations, for the employer. I was required to rule on all evidentiary matters which were applicable to the proceedings. Cross-examination of witnesses as well as parties was also permitted. After the hearing was concluded, I evaluated the evidence and made findings of fact and conclusions of law in a written decision. This decision would be mailed to all interested parties who could then appeal to the Board of Appeals of the Employment Security Administration."

The Board gave three reasons for denying Mark W.'s petition. Because we believe that the Board was correct in its third reason, that the applicant has not been engaged in the practice of law, we focus only on it. The Board said:

"[T]he Applicant's duties do not qualify as the 'practice of law'. The Court of Special Appeals in *Lukas vs. Bar Association of Montgomery County, Maryland, Inc.*, 35 Md.App. 442, 371 A.2d 669 [ (1977) ], while not formulating a precise definition of the practice of law, elicited three general areas constituting, in the Court's opinion, the practice of law. They are instructing and advising clients in regard to the law; preparing documents requiring more than a layman's knowledge of legal principles; and representing clients before public tribunals. We do not feel that the Applicant's activities clearly fall within either of the said areas."

We do not adopt this definition of "practice of law." However, we believe the activities here do not come within the meaning of the term.

In *In Re Lohmeyer*, 218 Md. 575, 580, 147 A.2d 703, 706 (1959), we quoted from in *In Re Rotolo*, 247 App.Div. 724, 285 N.Y.S. 274 (1936), where the court said, "[T]here must be a strict construction of the rules of admission on motion." To similar effect see *Application of Babcock*, 387 P.2d 694, 696 (Alaska 1963).

■ Numerous definitions of what constitutes practice of law are to be found. Some definitions such as that mentioned by the Board as given by the Court of Special Appeals in *Lukas v. Bar Ass'n of Montgomery County*, 35 Md.App. 442, 444–45, 371 A.2d 669, 671, *cert. denied*, 280 Md. 733 (1977), are much more complicated than others. *See, e.g., Babcock*, 387 P.2d at 697; *Undem v. State Bd. of Law Examiners*, 266 Ark. 683, 692, 696, 587 S.W.2d 563, 568–70 (1979); *State Bar of Arizona v. Arizona Land Title & Trust Co.*, 90 Ariz. 76, 87, 366 P.2d 1, 8–9 (1961); *J.H. Marshall & Associates, Inc. v. Burleson*, 313 A.2d 587, 594 (D.C.1973); *Gazan v. Heery*, 183 Ga. 30, 36–39, 187 S.E. 371, 375–76 (1936); *Miller v. Vance*, 463 N.E.2d 250, 251 (Ind.1984), quoting *Matter of Perrello*, 270 Ind. 390, 398, 386 N.E.2d 174, 179 (1979); *Grand Rapids Bar Ass'n v. Denkema*, 290 Mich. 56, 62–4, 287 N.W. 377, 379–80 (1939); *In Re Thompson*, 574 S.W.2d 365, 366 (Mo. en banc 1978); *Appell v. Reiner*, 81 N.J.Super. 229, 236, 195 A.2d 310, 314 (1963); *State, ex rel. v. Shattuck*, 1 Ohio St.3d 272, 274, 439 N.E.2d 891, 892–93 (1982); *State, ex rel. v. Schwarzwalder*, 165 Ohio St. 447, 453, 136 N.E.2d 47, 51 (1956); *Shortz et al. v. Farrell*, 327 Pa. 81, 84–5, 193 A. 20, 21 (1937); *In Re Petitions of Jackson and Shields*, 95 R.I. 393, 398–99, 187 A.2d 536, 539–40 (1963); *In Re Duncan*, 83 S.C. 186, 189, 65 S.E. 210, 211 (1909); *State ex rel. Laughlin v. State B.A.*, 26 Wash.2d 914, 927–28, 176 P.2d 301, 309 (1947). These definitions have arisen in a variety of circumstances. Some have involved illegal or unauthorized practice of law. At least three have to do with eligibility for judges. Some have arisen under comity statutes. All of these definitions are consistent with that in *Lukas* which the Board summarized. In *In Re Application of Dodd*, 132 Conn. 237, 242,

43 A.2d 224, 226–27 (1945), the court said that attempts to define the practice of law have not been particularly successful and then went on to quote from *Grievance Committee v. Payne,* 128 Conn. 325, 329, 22 A.2d 623, 625 (1941), " '[t]he more practical approach is to consider each state of facts and determine whether it falls within the fair intendment of the term.' " We agree.

Relative to the admission of attorneys from out-of-state *see generally* Annots., 14 A.L.R. 4th 7 (1982), and 51 A.L.R.2d 1198 (1957); 7 C.J.S. *Attorney & Client* § 26 b (1980); 7 Am.Jur.2d *Attorneys at Law* § 22 (1980); 29 *The Bar Examiner* 35 (1960). In *Pub. Serv. Comm'n v. Hahn Transp., Inc.,* 253 Md. 571, 583, 253 A.2d 845, 852 (1969), Chief Judge Hammond said for the Court that the General Assembly "consistently has recognized that the courts can and should decide in any instance presented [as] to what does and what does not constitute the practice of law."

A number of cases have set forth reasons for the practice requirement in statutes or rules similar to § 7 and Rule 14 pertaining to the admission without full examination of lawyers who have been admitted to practice in other states. *See, e.g., In Re Application of Plantamura,* 149 Conn. 111, 114, 176 A.2d 61, 62 (1961), *cert. denied,* 369 U.S. 872, 82 S.Ct. 1141, 8 L.Ed.2d 275 (1962) ("Actual practice in the highest court of original jurisdiction provides a crucible for testing legal knowledge and its practical application in behalf of clients."); *Petition of Nenno,* 472 A.2d 815, 819–20 (Del.1983) ("The intent of Rule 53(a)(2) is to allow admission upon a limited examination only to those persons who come to Delaware with the skills acquired during at least five years in the 'practice of law', a term of art connoting much more than merely working with legally-related matters."); *In Re Huntley,* 424 A.2d 8, 11 (Del.1980) ("The purpose, we think, of the condition that the applicant have been actively engaged in the practice of law for the preceding five years is to support a presumption (created under Rule 53(a)) that such an applicant is competent in the law on the basis of his experience in practice as well as his

success in another State's 'full' bar examination."); *In Re Petitions of Jackson and Shields,* 95 R.I. 393, 398, 187 A.2d 536, 539 (1963) ("The purpose of this condition is to insure that lawyers whose qualification for practice initially had been established by examination had thereafter in the practice of law accumulated a sufficient experience to make a prima facie case of their present qualifications for admission without examination to the bar of this state."); *Lane v. W. Va. State Bd. of Law Examiners,* 295 S.E.2d 670, 674 (W.Va.1982) ("Examination is not required of this class of applicants because, presumably, they have already demonstrated their skill and general knowledge of the law by satisfying the admission requirements of a sister state and by actively engaging in the practice of law.").

The wide variety of statutes and rules pertaining to admission of out-of-state attorneys with no examination or a limited examination, as in Maryland, is illustrated by the following cases: *Application of Brewer,* 506 P.2d 676, 677–78 (Alaska 1973); *Undem,* 266 Ark. at 685, 587 S.W.2d at 564; *In Re Application of Slade,* 169 Conn. 677, 679, 363 A.2d 1099, 1101 (1975); *Huntley,* 424 A.2d at 10 (Del.); *In Re Kennedy,* 132 Ga.App. 7, 8–9, 207 S.E.2d 259, 260 (1974); *Stern v. State Board of Law Examiners,* 245 Ind. 526, 529–30, 199 N.E.2d 850, 851–52 (1964); *Harty v. Board of Bar Examiners,* 81 N.M. 116, 117, 464 P.2d 406, 407 (1970); *Matter of Lerch,* 280 N.Y. 74, 75, 19 N.E.2d 788, 789 (1939); *Petition of Sasseville,* 336 N.W.2d 624, 625–26 (N.D.1983); *Roney, In Re John M.,* 115 R.I. 194, 195, 341 A.2d 752, 753 (1975); *In Re Ridenour,* 23 Wash.2d 779, 784–85, 162 P.2d 278, 280–81 (en banc 1945). No statute or rule we have examined appears to be precisely like ours.

The cases which we have examined from out-of-state provide little or no guidance to our decision here. Rather, they seem to illustrate application of the suggestion in *Payne,* 128 Conn. at 329, 22 A.2d at 625, that "[t]he more practical approach [to determining what constitutes the practice of law] is to consider each state of facts and determine whether it falls within the fair intendment of the

term." We shall review a number of those cases; however, our mention of a decision should not be taken as an endorsement of the views expressed in it.

In some cases different types of government work have been considered practice of law for the purpose of admission of an out-of-state attorney to the bar. In *Brewer*, 506 P.2d 676 (Alaska), the statute required an attorney to be in good standing elsewhere and have "engaged in the active practice of law for at least five out of the previous six years before filing the application, excluding time spent in the military service of the United States . . . ." The Alaska Bar tacked on to that by rule a requirement that such practice have been in the state, district or territory of admission. Brewer applied for admission in 1971. From July 1, 1966, to the date of hearing he had been a District Court judge in Alaska. The court struck down the rule pertaining to practice in the state of admission and held "that applicant's activities as district judge constitute the 'practice of law'. . . ."

In *Application of Payne*, 430 P.2d 566 (Alaska 1967), the statute was the same as that in *Brewer*. The term "active practice of law" was defined by statute as including the "rendering [of] legal services to an agency, branch, or department of a civil government in the United States or a state or territory of the United States, in an elective, appointive or employed capacity . . . ." Payne asserted, and the court found those assertions correct, that in the performance of his duties as an attorney for the U.S. Army Corps of Engineers he was " 'engaged in the general practice of law handling contract claims, tort claims, real estate transactions, condemnation cases, quiet title proceedings, and numerous other legal problems of a general and advisory nature.' " 430 P.2d at 569. He was deemed entitled to admission.

The comity statute before the court in *State Bar of Ga. v. Haas*, 133 Ga.App. 311, 211 S.E.2d 161 (1974), required practice on a substantially full-time basis in a state of the

United States or in the District of Columbia for time periods totaling cumulatively at least five full years within the eight-year period immediately preceding the filing date of the application. Haas had been admitted to practice in New York in 1946. He was recalled to active duty by the United States Air Force in 1951 and continued in that status until his retirement in 1972. In 1956 he was designated as an Air Force Judge Advocate, in which position he served until his retirement. He had not been assigned to a military installation in New York in the eight years immediately preceding his application for admission to the Georgia Bar. The court said:

> "His initial designation as a judge advocate was contingent on his being a member either of the District of Columbia Bar or a State Bar in good standing. Thereafter his continued practice as a military lawyer was contingent on his remaining a member of his original Bar in good standing. Thus wherever he performed the practice of law as a judge advocate pursuant to military orders at home or abroad, he was in a very practical sense representing the Bar of his admission and practicing under their auspices. This meets the requirements of the statute." 133 Ga.App. at 316, 211 S.E.2d at 165.

The rule involved in *Harty*, 81 N.M. 116, 464 P.2d 406, required that an individual have actively and continuously practiced law for at least seven of the eight years immediately preceding the filing of his application. Harty was employed first as an attorney for the regional office of the Veterans Administration. Then from 1962 to 1968 he was "Attorney (Estate Tax) GS–905" for the Internal Revenue Service, where, according to the court, 81 N.M. at 117, 464 P.2d at 407, "he advised the United States Government on questions of law involving mortgages, patent rights, contracts, lease-hold interests, domestic relations, corporate law, trust law, law of wills, criminal law, and federal tax questions." The court said, "Mr. Harty was of the opinion that all of the work that he was doing should be done by legally trained people, but that probably thirty per cent of

his time was on strictly legal work." 81 N.M. at 117, 464 P.2d at 407. In finding that Harty met the test of the rule, the court said:

"Many lawyers perform services for their clients which could have been performed by others who are not lawyers. All magistrate court work could be handled by non-lawyers. An attorney specializing in tax work could well spend two-thirds of his time doing work non-lawyers could do and still he would be practicing law. The fact that considerable time is spent in doing work a non-lawyer could do is not the test." 81 N.M. at 118, 464 P.2d at 408.

Under the same rule as was applicable in *Harty* the court in *Warren v. Board of Bar Examiners*, 75 N.M. 627, 409 P.2d 263 (1966), had before it the application of an individual who had been admitted to practice in Wisconsin in 1955. Shortly thereafter he entered the military service during which time he was certified as competent to perform the duties of trial counsel and defense counsel of general courts-martial, though not a member of the Judge Advocate General Corps. He became employed as an attorney for the Los Alamos Area Office of the United States Atomic Energy Commission and remained so employed up until the time of his request for admission. The court said:

"Without detailing the type of service rendered by the petitioner in his capacity as attorney for the Atomic Energy Commission, suffice it to say that, from a legal standpoint, it is highly diversified, and embraces work in practically all phases of federal, state and local laws, both civil and criminal." 75 N.M. at 629, 409 P.2d at 264–65.

He was held qualified.

In *Olsen, Petition of,* 112 R.I. 673, 314 A.2d 140 (1974), the court concluded that time spent as a law clerk in the United States Court of Claims should be counted toward the requirement of actual practice of law in another state.

A case not concerning bar admission but dealing with practice of law is *Shattuck*, 1 Ohio St.3d 272, 439 N.E.2d

891. A statute required that for one to become a judge of the Court of Common Pleas one must have been engaged in the practice of law for at least six years prior to his appointment. During the preceding five and one-half years Shattuck had been employed full-time as a referee with the General Division of the Court of Common Pleas of Greene County. The court said it found:

"[T]he better-reasoned approach was taken by the Supreme Court of Georgia in *Gazan v. Heery* (1936), 183 Ga. 30, 187 S.E. 371. Construing a similar qualifications statute, that court stated, at page 42: ' * * * The words "practice of law" may have an entirely different meaning in a statute designed to prevent the practice of law by one not qualified to do so, from that which the same expression should have in determining qualification to hold judicial office. * * * The purpose of section 6 of the statute creating the municipal court of Savannah was not to place an arbitrary and technical barrier against a person who might possess in reality the knowledge, training, experience, and soundness of judgment such as would qualify him to fill the office of chief judge of the municipal court. Words limiting the right of a person to hold office are to be given a liberal construction in favor of those seeking to hold office, in order that the public may have the benefit of choice from all those who are in fact and in law qualified.'

"Adopting this rationale, we hold that employment of a lawyer as a referee constitutes the practice of law for purposes of R.C. 2301.01 and overrule [*State, ex rel.*] *Flynn* [*v. Bd. of Elections*, 164 Ohio St. 193, 129 N.E.2d 623 (1955),] insofar as it is inconsistent with today's decision." 1 Ohio St.3d at 274, 439 N.E.2d at 892–93.

There are cases holding that government work does not constitute practice of law so as to qualify one for admission under a statute or rule pertaining to out-of-state attorneys. In *Application of Gray*, 430 P.2d 571 (Alaska 1967), the statute was the same as in *Brewer*, 506 P.2d 676. Gray was admitted to the Montana Bar in 1938. From then until

14

December 1964 he was employed with the U.S. Immigration and Naturalization Service. In denying him admission the court said:

"[P]etitioner's proof adduced to the Board did not demonstrate that he was required to, and in fact did, devote a substantial portion of his work time to the rendering of legal services to the U.S. Immigration and Naturalization Service. On the basis of petitioner's showing, we are of the further view that petitioner's proof failed to disclose that the legal services which he did render were sufficiently broad in scope to qualify as 'legal services' under AS 08.08.245(3). In short, the legal services which petitioner did perform were limited to the highly specialized areas of naturalization and citizenship matters. In light of the narrow range of petitioner's actual legal experience while in the employ of the U.S. Immigration and Naturalization Service, we hold that the Board of Governors was warranted in reaching the conclusions of law which were entered in this matter." 430 P.2d at 573.

The lawyer in *Babcock*, 387 P.2d 694 (Alaska), was not a law school graduate. He was admitted to the bar in Maine in 1949 and reentered the military service in June 1952. According to the court:

"His practice of law in the Air Force was a full-time assignment as a judge advocate and encompassed a wide range of legal endeavor. He participated in almost a thousand trials, as either prosecutor, defense counsel, or law officer (judge). He acted as legal advisor to staff agencies and took part in contract negotiations, tax matters and administrative hearings." 387 P.2d at 694–95.

As a non-law school graduate to be admitted to practice in Alaska without examination it was necessary that he have "been engaged in the active practice of law for at least 10 years . . . ." After discussion of the term "practice of law," the court said:

"[W]e do not believe that it can be reasonably said of a lawyer in the military service, even though he be assigned to do work only of a legal nature, that he is engaged in

the business or profession of practicing law. His business or profession while in the Armed Forces, as we see it, is that of being a soldier, a man in the service of his country." 387 P.2d 697–98.

.The applicant in *Sasseville*, 336 N.W.2d 624 (N.D.), had been a member of the Minnesota Public Utilities Commission for six years. For purposes of admission without examination the North Dakota rule required that one have been admitted to the bar of some other state for not less than five years and "shall have practiced in such state, or states, or in the District of Columbia, in which he was admitted, for at least 4 of the last 5 years immediately preceding his motion for admission to practice law" in North Dakota. Ms. Sasseville contended that virtually all the matters before the Public Utilities Commission were contested cases and subject to formal hearings, with adjudications based on the record. She described her duties:

" 'I drafted important sections of most orders and complete orders or dissents or concurring opinions in various cases. The nature of this work was judicial in essence. In a contested case in which the rights of various parties would be determined on the record, I was responsible for the adjudication of those rights and interests for determining the facts and applying the law, as well as for setting forth the public policy determinations of the state. In all these matters, I served in a judicial function much as one might serve in a tribunal of a special jurisdiction: as a magistrate, or as a judge in a court of claims or a special tax court or other tribunal whose subject matter jurisdiction is arcane or specialized enough to require that the trier of fact have expertise in that area of law.' " 336 N.W.2d at 627.

The court said:

"Although such activities may involve quasi-judicial matters they are the type of activities which we would expect both lawyer and nonlawyer members of the Commission to engage in. On the other hand, we expect that the lawyer members of the Commission, including Sasseville,

would, at times, engage in accounting, engineering, or property-valuation activities." 336 N.W.2d at 628.

At 629 the court "recognize[d] . . . whether or not Sasseville may be considered to have practiced law while serving as a Commissioner is a close question" and held that she "ha[d] not met her burden" under its rule.

*State ex rel. Laughlin v. State B.A.*, 26 Wash.2d 914, 176 P.2d 301 (1947), was yet another case involving a member of the Judge Advocate General's Department of the Army. Washington Rule III required for admission without examination that an individual have been previously admitted "to the bar of another state or territory and practice therein" and that he have "actively engaged in practice in such state or ha[ve] held a judicial position therein or ha[ve] been engaged in the teaching of law in an approved law school therein for a total period of at least five years . . . ." Laughlin was admitted to the bar in South Dakota in 1914. He practiced there three and one-half years until he entered the Army in December 1917. He was in the Army for the next twenty-nine years in various positions with the Judge Advocate General's Department, where he tried many cases. For instance, in the period 1920–25 the court said, "While in Hawaii, Colonel Laughlin, according to his affidavit, tried approximately five hundred general court martial cases 'involving nearly every crime.' " 26 Wash.2d at 921, 176 P.2d at 305. He had a wide range of activities after that. The court said:

"Finally, Colonel Laughlin contends that his tour of duty in the judge advocate's division of the army outside of the United States, supplemented with work of a similar character within the United States, should be accepted as a substitute for the specific requirements of *actual* and *active* practice required by our Rule III. The simple and direct answer to this contention is that Rule III does not permit the substitution of any type of work for active and actual practice of the law, as required by its very rigid terms." 26 Wash.2d at 931, 176 P.2d at 311. (Emphasis in original.)

Other activities have been held not to constitute practice of law within the meaning of statutes or rules pertaining to the admission of out-of-state attorneys. *Undem*, 266 Ark. 683, 587 S.W.2d 563, concerned a Minnesota attorney who applied under an Arkansas rule which required that for admission without examination one must have been engaged in the "active practice of law" for at least three years preceding application for admission. This man was president and chief executive officer of an Arkansas bank. A great deal of space was devoted in the court's opinion to setting forth the duties which Undem contended were legal in nature and which should qualify him for admission. In denying him admission the court said: "It was never intended that the requirement of three years of active practice of law could be met by practice in Arkansas. This could only be done by engaging in the unauthorized practice of law. Such a construction of the rule would result in an absurdity." 266 Ark. at 696, 587 S.W.2d at 570.

In *In re Application of Marsching*, 161 Conn. 166, 286 A.2d 306 (1971), the rule required that an individual have "actually practiced law in the highest court of original jurisdiction in one or more states, or in one or more district courts of the United States, for at least five years immediately preceding the date of his application." The applicant was admitted to the New York Bar in 1954. The court said:

"[He] engaged in the practice of law on a full-time basis in the city of New York from 1955 until 1967 as an associate of a large and well-known law firm. During the last six years of his practice in New York the applicant advised and assisted clients of the law firm on the merits, strategy and conduct of the defense or suit and on settlement, had responsibility for the direction of litigation, worked on briefs and questions of law and participated in settlement discussions. The litigation department of the law firm, however, took care of the actual courtroom work and the applicant did not physically appear in the courtroom or personally try or argue a case or motion therein." 161 Conn. at 167–68, 286 A.2d at 307.

The court held that its rule "must be construed to require 'actual practice' and not merely 'authority to practice.' " 161 Conn. at 169, 286 A.2d at 308. Accordingly, the application was denied.

In *Sparkman v. State Board of Bar Examiners*, 77 N.M. 551, 425 P.2d 313 (1967), the court held that work as a claims adjuster for an insurance company did not constitute practice of law so as to entitle one to admission without examination.

Some courts have declined to count activities within their states as constituting practice of law for a required period under a comity rule. *See, e.g., Rotolo*, 247 App.Div. 724, 285 N.Y.S. 274; *Church, In re Petition of*, 111 R.I. 425, 303 A.2d 758 (1973). In *Appell*, 81 N.J.Super. 229, 195 A.2d 310, a trial court held that activities of a New York lawyer on behalf of New Jersey residents constituted illegal practice of law in New Jersey and thus he was not permitted to collect for his services.

The cases which we have reviewed are of little assistance in reaching a decision here. We and the Board of Law Examiners must draw a line between what is and what is not "the practice of law" so as to qualify under the statute and the rule. No broad rule can be laid down, as the cases illustrate. Rather, each application must be judged on its own facts.

There are cases such as *Heery*, 183 Ga. 30, 187 S.E. 371, and *Schwarzwalder*, 165 Ohio St. 447, 136 N.E.2d 47, holding that for certain purposes the duties of a judge may be considered as the practice of law. Such a contention would not arise in Maryland, however, because the General Assembly when it enacted Art. 10, § 7 saw fit to provide that if an applicant had "been engaged as a . . . judge" he might be admitted without the usual examination. This applicant does not contend that he is a judge. He merely wishes to liken his functions to that of a judge. The applicant's duties do not begin to present the wide range of problems faced by a judge.

Rule 14 d requires an applicant "to satisfy the Board that [he] should be admitted under th[at] Rule." The applicant's activities were in a very narrow, specialized field. His work involved no clients, public or private.

 We accept the statement of the Supreme Court of Delaware in *Nenno*, 472 A.2d at 820, that " 'practice of law' [is] a term of art connoting much more than merely working with legally-related matters." Under Rule 14 g the burden is on the petitioner. There may well be cases in which the Board and we would find a hearing examiner or referee, because of the broad activities involved in his particular position, to have "been engaged as a practitioner ... of law" and thus that he would qualify under this rule. The applicant's duties are in sharp contrast to those of the referee in *Shattuck* who, as a full-time referee of the common pleas court, was said to be " 'daily confront[ed] [with the] vexing legal problems of the court ....' " 1 Ohio St.3d at 274, 439 N.E.2d at 892. In this case the applicant failed to convince the Board that his activities in a very limited field of law met the requirements of the statute and rule. We conclude that the Board did not err when it decided, in effect, that the applicant merely worked with legally-related matters and that his activities did not fall within the fair intendment of the term "practitioner of law" as used in the statute and the rule.

Our action here today does not deny this applicant admission to the bar. As has been stated in other cases, he has an alternative, which is to take the regular bar examination. See *Lowrie v. Goldenhersh*, 521 F.Supp. 534, 537, 540 (N.D.Ill.1981); *Dodd*, 132 Conn. at 246, 43 A.2d at 228; *App'n of H.S. Avery for Adm'n to Bar*, 44 Hawaii 90, 92, 352 P.2d 610, 611 (1960); *Edmonds v. Webb*, 182 Md. 60, 64, 32 A.2d 702, 703 (1943).

THE ACTION OF THE BOARD OF LAW EXAMINERS IS AFFIRMED, THE APPELLANT TO PAY THE COSTS.